**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 7/8/96**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellant,

v.

     Nos. 95-7158, 95-7168

HOLLIS EARL ROBERTS,

     Defendant-Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. CR-95-35-S)**

---

Lisa Simotas, Attorney, Department of Justice (John W. Raley, United States Attorney, Sheldon J. Sperling, Assistant United States Attorney, and Linda A. Epperley, Assistant United States Attorney, Eastern District of Oklahoma, with her on the briefs), Washington, D.C., for Plaintiff-Appellant.

Warren F. Bickford IV (Burck Bailey with him on the brief), Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, OK, for Defendant-Appellee.

---

Before **PORFILIO, BRORBY,** and **EBEL**, Circuit Judges.

---

**PER CURIAM**.

---

On June 9, 1995, Hollis Earl Roberts, Chief of the Choctaw Nation of Oklahoma, was indicted on two counts of aggravated sexual abuse in violation of 18 U.S.C. § 2241, one count of sexual abuse in violation of 18 U.S.C. § 2242, and five counts of abusive sexual contact in violation of 18 U.S.C. § 2244.  The allegations of three women comprise the substance of the indictment against Mr. Roberts.  The district court made three pretrial evidentiary rulings which the government appeals pursuant to 18 U.S.C. § 3731.

First, the district court determined the new Fed. R. Evid. 413 was inapplicable because the indictment against Mr. Roberts was filed prior to the rule's July 9, 1995 effective date.  Second, the court, under Fed. R. Evid. 404(b) and 403, excluded evidence from nine women not named in the indictment who allege Mr. Roberts also sexually abused them over the past twenty years.  Third, in a Minute Order, the district court denied the government's request to present evidence Mr. Roberts successfully initiated a change in the applicable tribal statute of limitations by the Choctaw Tribal Council to prevent one of the named women from bringing a civil suit against him in tribal court.  In addition, the government has filed a petition for a writ of mandamus for this court to order the district court to rule on another Fed. R. Evid. 404(b) issue concerning additional testimony from the named women about events not charged in the indictment.

−2−

Finally, the government asks us to exercise our inherent authority to assign a different district court judge to this case on remand.

We conclude the amended Fed. R. Evid. 413 is inapplicable here. We believe Congress intended Rule 413 to apply only to those criminal cases not already pending at the time the Rule became effective. Second, we remand the Fed. R. Evid. 404(b) issue concerning the nine additional women to the district court for an appropriate hearing to determine whether the government has established that Mr. Roberts engaged in a common scheme to abuse sexually women subject to his authority and whether each woman's testimony fits this pattern. Third, we also remand the Fed. R. Evid. 404(b) issue dealing with the tribal statute of limitations for the court to explain its reasoning in detail. Fourth, we deny the government's petition for a writ of mandamus. Fifth, and finally, we decline to exercise our inherent authority to reassign this case to a different district court judge on remand.[1]

**I.**

---

[1] In addition, Mr. Roberts has filed two motions to dismiss the government's appeals in this case. We have reviewed both motions and conclude they are without merit.

Initially, we must determine whether the new Fed. R. Evid. 413 applies.

The text of the challenged Rule 413 reads as follows:

**Rule 413. Evidence of Similar Crimes in Sexual Assault Cases**

(a) In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.

(b) In a case in which the Government intends to offer evidence under this rule, the attorney for the Government shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen days before the scheduled date of trial or at such later time as the court may allow for good cause.

(c) This rule shall not be construed to limit the admission or consideration of evidence under any other rule.

(d) For purposes of this rule and Rule 415, "offense of sexual assault" means a crime under Federal law or the law of a State (as defined in section 513 of title 18, United States Code) that involved--

(1) any conduct proscribed by chapter 109A of title 18, United States Code;

(2) contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person;

(3) contact, without consent, between the genitals or anus of the defendant and any part of another person's body;

(4) deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person; or

(5) an attempt or conspiracy to engage in conduct described in paragraphs (1)-(4).

Congress added Rule 413 to the Federal Rules of Evidence as part of the 1994 Crime Bill.  *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, Title XXXII, § 320935(a), 108 Stat. 2136 (1994).  As is evident from the text of the Rule, Fed. R. Evid. 413 was designed to create a "general rule[] of admissibility in sexual assault . . . cases for evidence that the defendant has committed offenses of the same type on other occasions."  Fed. R. Evid. 413 historical notes (quoting 140 Cong. Rec. H8991-92 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari)).  Rule 413 provides a specific admissibility standard in sexual assault cases, replacing Fed. R. Evid. 404(b)'s general criteria.

> The new rules will supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b).  In contrast to Rule 404(b)'s general prohibition of evidence of character or propensity, the new rules for sex offense cases authorize admission and consideration of evidence of an uncharged offense for its bearing "on any matter to which it is relevant."

*Id.*

According to the enabling legislation, the amended evidentiary rules were to "apply to proceedings commenced on or after the effective date of such amendments."  *See* Pub. L. No. 103-322, Title XXXII, § 320935(e).  The effective date of the amendments was to be determined based on the action taken by the

Judicial Conference of the United States with respect to recommendations concerning the proposed amendments. *Id.* § 320935(c)-(d). After the Violent Crime Control and Law Enforcement Act was passed on September 13, 1994, the Judicial Conference was given 150 days to "transmit to Congress a report containing recommendations" regarding the proposed new rules. *Id.* § 320935(c). If the recommendations from the Judicial Conference differed from the proposed amendments, the new rules were to become effective "150 days after the transmittal of the recommendations unless otherwise provided by law." *Id.* § 320935(d)(2). On February 9, 1995, the Judicial Conference transmitted its report to Congress, in which it proposed alternatives to the amendments. *See* Fed. R. Evid. 413 historical notes (discussing conference report). The alternatives suggested by the Judicial Conference were not accepted by Congress, and thus Rule 413 became effective 150 days later on July 9, 1995. *Id.*

Mr. Roberts argues that Rule 413 does not apply because his criminal prosecution "commenced" when he was indicted on June 9, 1995--one month prior to the effective date of Rule 413. The government, on the other hand, argues that Rule 413 is applicable because Mr. Roberts' upcoming trial is itself a "proceeding" which will be "commenced" after Rule 413's effective date. Thus, the issue is whether the phrase "proceedings commenced" refers narrowly, as the district court held, to the single commencement of the overall prosecution by the

filing of the indictment, or whether it refers more broadly to the commencement

of each of the various stages (*i.e.,* "proceedings") that occur during the

prosecution, such as a trial.

We review the district court's legal interpretation of the effective date

provision for Fed. R. Evid. 413 de novo. ***United States v. Diaz***, 989 F.2d 391,

392 (10th Cir. 1993); ***United States v. Maltais***, 961 F.2d 1485, 1486 (10th Cir.

1992). As in all statutory interpretation cases, "the beginning point must be the

language of the statute." ***Estate of Cowart v. Nicklos Drilling Co***., 505 U.S.

469, 475 (1992); ***FDIC v. Canfield***, 967 F.2d 443, 445 (10th Cir.) (en banc), *cert.*

*dismissed*, 506 U.S. 993 (1992). Only if the statutory language is ambiguous

should a court turn to legislative history as an aid in determining the statute's

meaning. ***O'Connor v. United States Dep't of Energy***, 942 F.2d 771, 773 (10th

Cir. 1991).

Both parties agree the crucial phrase in the statute is the meaning of the

term "proceedings." Because Congress did not define this term, its common and

ordinary usage may be obtained by reference to a dictionary. Black's Law

Dictionary defines "proceedings" as:

> The word may be used synonymously with "action" or "suit" to
> describe the entire course of an action at law or suit in equity from
> the issuance of the writ or filing of the complaint until the entry of a
> final judgment, or may be used to describe any act done by authority
> of a court of law and every step required to be taken in any cause by

–7–

either party.  The proceedings of a suit embrace *all* matters that occur in its progress judicially.

Term "proceeding" may refer not only to a complete remedy but also to a mere procedural step that is part of a larger action or special proceeding.

Black's Law Dictionary 1204 (6th ed. 1990) (citations omitted).  Similarly, Webster's defines "proceedings" as:  "The course of procedure in a judicial action or in a suit in litigation: legal action; a particular action at law or case in litigation."  Webster's Third New International Dictionary 1807 (1993).  Quite obviously, these dictionary definitions fail to clarify the issue.  Both the government's and Mr. Roberts' interpretation of the term fall within the common usage and meaning of the word.  "Proceedings" may be used either to refer to a legal action or case in its entirety, or to any incremental stage in that same legal action or case.  Because the plain meaning of the statute does not resolve our interpretative dilemma, we must proceed to other methods of statutory interpretation.

Both the government and Mr. Roberts direct our attention to prior cases purporting to define the term "proceedings."  Not surprisingly, given the conflicting dictionary definitions of the word, precedent exists to buttress the positions of both parties.  The government, for example, cites a number of cases in which courts have implied that the word "proceedings" refers to all interim

steps in a criminal prosecution from indictment to judgment. *See, e.g., **Hill v.**

**Martin**, 296 U.S. 393, 403 (1935) (noting that the term "is comprehensive. It

includes all steps taken or which may be taken . . . from the institution to the

close of the final process"); **United States v. Browning, Inc.**, 572 F.2d 720, 724

(10th Cir.) ("[T]he term 'proceeding' is not, as one might be inclined to believe,

limited to something in the nature of a trial."), *cert. denied*, 439 U.S. 822 (1978).[2]

Similarly, Mr. Roberts invokes a number of cases suggesting that a "proceeding

commenced" refers to an entire case, beginning with the indictment or formal

charge. *See, e.g.,* **Kirby v. Illinois**, 406 U.S. 682, 689 (1972) (plurality opinion)

(stating that criminal proceedings are generally initiated by "formal charge,

preliminary hearing, indictment, information, or arraignment"); **United States v.**

---

[2] The government also cites a number of other federal statutes and rules which draw at least a linguistic distinction between criminal "cases" and criminal "proceedings." *See, e.g.,* Fed. R. Evid. 1101(b) ("These rules apply generally to civil actions and proceedings, . . . [and] to criminal cases and proceedings. . . ."). In addition, the government points out that although Congress used the phrase "proceedings" in Rule 413's enabling legislation, it used the phrase "criminal case" in the text of the Rule. In the government's view, this choice of words suggests that Congress meant to refer to something other than an entire criminal "case" when it used the broader term "proceedings." *See **City of Chicago v. Environmental Defense Fund,*** 114 S. Ct. 1588, 1593 (1994) ("[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.") (internal quotation marks omitted, alteration in original).

***Brian N.***, 900 F.2d 218, 223 ("Proceedings . . . commence with the filing of the information.").

We acknowledge there is strong evidence pointing both ways as to the intent of Congress in making Fed. R. Evid. 413 applicable to "proceedings commenced." However, we find more persuasive the argument that criminal "proceedings commence[]" when the defendant is charged, *i.e.*, when the indictment or information is filed. We find support for our position in a comparison of the implementing language for the new rules of evidence with the effective date language from the original Federal Rules of Evidence enacted in 1975. The 1975 implementing language provided:

> These rules apply to actions, cases, and proceedings brought after the rules take effect. *These rules also apply to further procedure in actions, cases, and proceedings then pending*, except to the extent that application of the rules would not be feasible, or would work injustice, in which event former evidentiary principles apply.

Pub. L. No. 93-595, § 1, 88 Stat. 1926 (1975) (emphasis added). The 1975 rules explicitly provided for their applicability to pending cases while the 1994 rules do not. In addition, since 1975, the Supreme Court has used identical language in almost every instance when amending any of the various Federal Rules:

> That the foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 1993, and shall govern all proceedings in civil cases thereafter commenced *and, insofar as just and practicable, all proceedings in civil cases then pending*.

–10–

*Order of the United States Supreme Court Adopting and Amending the Federal Rules of Civil Procedure* (April 22, 1993), *reprinted in* 113 S.Ct. at 478 (introductory pages) (emphasis added). Because the proposed Federal Rules must be transmitted to Congress when prescribed by the Supreme Court, *see* 28 U.S.C. §§ 2072(a), 2074(a), and almost always contain this standard effective date language, we may presume Congress was aware of how to make amended rules applicable to pending cases.[3] Moreover, courts interpreting these effective date provisos consistently have held that when it is "just and practicable," new Federal Rules may apply to a particular pending case. *See, e.g.*, **United States v. Platero**, 72 F.3d 806, 811-13 (10th Cir. 1995) (Federal Rules of Evidence); **Espinoza v. United States**, 52 F.3d 838, 840-41 (10th Cir. 1995) (Federal Rules of Civil Procedure); **Cole v. Ruidoso Mun. Schs.**, 43 F.3d 1373, 1385-86 (10th Cir. 1994) (Federal Rules of Appellate Procedure); **Matter of Search of Premises Known As 6455 South Yosemite, Englewood, Colo.**, 897 F.2d 1549, 1553-54 (10th Cir. 1990) (Federal Rules of Criminal Procedure). Because Congress was aware of

---

[3] We also note that when the Supreme Court prescribes a new rule of evidence or procedure under the Rules Enabling Act, 28 U.S.C. § 2072, Congress has authorized the Court to "fix the extent such rule shall apply to proceedings then pending," 28 U.S.C. § 2074(a). Congress' use of the phrase "proceedings then pending" in the precise statutory context we are now considering--*i.e.,* retroactive application of new rules of evidence--is a strong indication that Congress would have used the same phrase in Rule 413's enabling legislation if it had intended the Rule to apply to criminal cases in midstream.

how to make amended rules applicable to "proceedings then pending," we believe Congress' failure to do so with respect to Fed. R. Evid. 413 indicates that the rule was not intended to apply to criminal cases already pending as of the rule's effective date. We therefore affirm the district court's ruling that Rule 413 does not apply in this case.

## II.

Additionally, the government challenges the district court's exclusion of evidence of Mr. Roberts' commission of similar sexual abuse against nine women not named in the indictment. Pursuant to Fed. R. Evid. 404(b) the government sought to introduce evidence from these nine additional women. The district court excluded this evidence on the ground its potential prejudice substantially outweighed its probative value after conducting the required balancing inquiry of Fed. R. Evid. 403.

On appeal, the government stresses Rule 404(b) is a rule of inclusion. The government maintains the court erred in failing to explain in detail the rationale behind its conclusion the evidence's prejudicial impact outweighed its probative value. Instead, the court improperly focused on its perception of the government's unstated motivation for introducing the evidence which the court identified as an attempt to demonstrate Roberts acted in conformity with the other

acts evidence. Further, the government argues the court failed to account for the highly probative nature of the evidence to establish Mr. Roberts' intent to commit the crimes for which he faced charges by the longstanding pattern of his sexual abuse against women.

In response, Mr. Roberts claims the district court correctly excluded the evidence and offered sufficient justification in concluding the evidence was unduly prejudicial to be admissible at trial. He also argues the government's motivation in introducing the evidence is a relevant consideration under Rule 404(b) since the rule prohibits other acts evidence from being introduced solely to prove a defendant's criminal disposition.

We review a decision to admit or exclude evidence under Fed. R. Evid. 404(b) for an abuse of discretion. *United States v. Deninno*, 29 F.3d 572, 577 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1117 (1995); *United States v. Patterson*, 20 F.3d 809, 813 (10th Cir.), *cert. denied*, 115 S.Ct. 128 (1994). Rule 404(b) prohibits the government from offering evidence of other crimes, wrongs, or acts to demonstrate the bad character, moral turpitude, or criminal disposition of a defendant to prove he acted in conformity with the prior acts or events. However, the rule permits the introduction of such evidence for other approved purposes, including to demonstrate a defendant's identity or intent to commit a crime by demonstrating a common scheme or plan. *United States v. McGuire*, 27 F.3d

457, 461 (10th Cir. 1994).  The Supreme Court outlined the four procedural safeguards to govern admission decisions under Rule 404(b) in *Huddleston v. United States*, 485 U.S. 681 (1988).  We have listed these four requirements as follows:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Jefferson*, 925 F.2d 1242, 1258 (10th Cir.), *cert. denied*, 502 U.S. 884 (1991); *see also* **Huddleston**, 485 U.S. at 691-92.  **Huddleston** adopted an "inclusive approach" to admitting evidence under this rule.  *United States v. Record*, 873 F.2d 1363, 1375 (10th Cir. 1989).

The district court properly applied **Huddleston** in this case.  It concluded the first, second, and fourth requirements had been met but the evidence must be excluded under Rule 403, the third requirement.  The court reasoned:

> The government has failed, however, to convince this court as to the third element -- that the probative value of the proposed "other acts" testimony is not substantially outweighed by its potential for unfair prejudice.  While the court does agree that the testimony of other women as to Roberts's allegedly sexually abusive behavior directed *towards them* does have some limited probative value as to the question of Roberts's intent to sexually abuse [the three women named in the indictment], the testimony will almost certainly result in Roberts being denied a fair opportunity to defend the specific

–14–

charges set forth in the indictment. The limited probative value of this proposed "other acts" testimony is significantly overshadowed by the proclivity of the testimony to prove only Roberts's criminal disposition. It is apparent to the court that, contrary to the government's assertions otherwise, the principle reason for the government's introduction of the proposed "other acts" testimony is to demonstrate a *propensity* on the part of Roberts to act in a similar fashion, i.e., with the same criminal character suggested by the "other acts", with respect to the pending charges. Thus, the government's attempt to adversely reflect on Roberts's character to show that he acted in conformity with his previous bad acts will not be countenanced.

(emphasis in original; alteration added).

We give substantial deference to a district court's Rule 403 decisions. *Patterson*, 20 F.3d at 814; *United States v. Easter*, 981 F.2d 1549, 1554 (10th Cir. 1992), *cert. denied*, 508 U.S. 953 (1993). This deference is due to the trial court's suitability for the task given the judge's familiarity with the full array of the evidence. *Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1284 (10th Cir. 1994); *United States v. Keys*, 899 F.2d 983, 987 (10th Cir.), *cert. denied*, 498 U.S. 858 (1990). "Rule 403 gives the district court discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of, among other things, unfair prejudice, confusion of the issues, or misleading the jury." *United States v. Galloway*, 937 F.2d 542, 548 (10th Cir. 1991). "Evidence is unfairly prejudicial if it 'makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's

attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.'" *United States v. Yazzie*, 59 F.3d 807, 811 (9th Cir. 1995) (quoting *United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir. 1987)). However, despite the discretion afforded the district court, we have previously cautioned, "Rule 403 is an extraordinary remedy and should be used sparingly." *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1408 (10th Cir. 1988); *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1155 (10th Cir. 1985).

We share the government's concern the district court failed to analyze the evidence from the nine women in sufficient detail. Initially, in its Rule 404(b) notice the government informed Mr. Roberts it intended to introduce Rule 404(b) evidence for all of the approved purposes outlined in the rule. In particular, however, the government also noted, "such evidence will be introduced to show a pattern of verbal and physical conduct and behavior by the defendant, . . . directed toward the victims . . . during a time when said victims . . . were employed by the Choctaw Nation of Oklahoma . . . ." Moreover, in response to Mr. Roberts' motion in limine, the government stated the evidence would be used to show "the defendant's knowledge that young female employees are easy to victimize without fear of reprisal," and to establish the "defendant's opportunity, in that he used his position as Chief" to take advantage of women subject to his authority. The district court did not analyze the individual evidence concerning each of the nine

women to determine whether the government had presented sufficient facts to demonstrate Mr. Roberts engaged in a common scheme to abuse sexually women working under his authority.  Instead, the court focused exclusively on whether the evidence demonstrated the defendant's intent to abuse sexually the three women named in the indictment.

Our review of the record indicates the government clearly raised the issue of Mr. Roberts' common scheme of sexually abusive behavior in all of its Rule 404(b) motions and at the Rule 404(b) hearing.  Yet, the court failed to consider and rule upon what we believe was the government's strongest rationale for introducing this evidence at trial.  This omission was error.

Because our review of this evidence in its present posture indicates the plausibility that Mr. Roberts' sexual harassment and abuse of all twelve women involved in this case was part of a common plan, we believe the district court should have considered the government's proffer in that context.  Unfortunately, the government offers limited evidence concerning the nine women's probable testimony at trial.  The record on appeal is simply insufficient for us to definitively determine whether it sustains the government's hypothesis.  The government must produce additional information about the details of each of the nine women's proposed testimony before a firm conclusion on this issue is

possible. The district court must make this determination in the first instance on remand after holding an appropriate pretrial hearing.

We appreciate and understand the district court's legitimate concern with the overall potential prejudice of the evidence in question. We recognize and do not minimize the potential for the cumulative impact of the Rule 404(b) evidence to overwhelm the crimes for which Mr. Roberts has been indicted and will be tried. However, we believe the district court must analyze each of the nine women's proposed testimony and evaluate it on its individual merit before making the ultimate decision whether to exclude this evidence under Rule 403. The government's theory of a common scheme on Mr. Roberts' part sexually to harass and abuse females under his authority requires this kind of attention rather than an all or nothing determination of whether the government's Rule 404(b) evidence is admissible.

Nonetheless, this holding does not portend a requirement that district courts conduct similar hearings in all Fed. R. Evid. 404(b) cases involving the government's attempt to establish the defendant's common scheme or plan. The nature of the evidence relied upon by the prosecution will dictate how the issue must be resolved. Under the unique and specific circumstances present here, however, we believe a detailed investigation of the evidence is appropriate

because the government failed to provide the district court or this court with a sufficiently detailed record to effect an appropriate resolution of the issue.

Finally, the government takes issue with the district court's reference to the government's improper motivation for seeking to introduce this Rule 404(b) evidence. We agree with the government that its motives are irrelevant to a proper analysis under Rule 404(b) and **Huddleston**. However, we also believe the district court's comment was an isolated reference which did not drive its decision. Instead, the court's resolution was based on its substantive legal determination the potential prejudice of the evidence substantially outweighed its probative value. As a result, while the court's reference was intemperate, we do not believe it was determinative.

## III.

Next, the government appeals the district court's decision not to allow it to introduce evidence pursuant to Fed. R. Evid. 404(b) that Mr. Roberts initiated the Choctaw Tribal Council's decision to shorten the applicable tribal statute of limitations for filing civil claims from twelve months to six months. As a result of this change, the government argues the civil lawsuit instituted by one alleged victim against Mr. Roberts for sexual assault was rendered untimely. The government asserts this incident demonstrates Mr. Roberts' consciousness of guilt

making it relevant evidence for his trial. The district court ruled on this issue in a minute order which, without discussion, found the "proposed evidence regarding the shortening of the Statute of Limitations to be inadmissible."

We were confronted with a similar disposition by minute order in *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1559 (10th Cir. 1996). In *Olcott*, we noted, "[t]he district court's summary disposition of this issue renders it impossible for us to review the propriety of its decision." *Id.* We face an identical dilemma in this case. Without any reasoned elaboration by the district court we have no way of understanding the basis of its decision to exclude this evidence. As an appellate court, we are in no position to speculate about the possible considerations which might have informed the district court's judgment. Instead, we require an on the record decision by the court explaining its reasoning in detail. Accordingly, we remand this issue to the district court for it to reveal why it excluded the government's evidence concerning the shortening of the statute of limitations.

## IV.

Further, the government requests us to issue a writ of mandamus directing the district court to rule on the admissibility of the Fed. R. Evid. 404(b) evidence from the three women named in the indictment. In ruling on the admissibility of

the government's Rule 404(b) evidence generally, the district court explicitly declined to address this issue, explaining in a footnote:

> As previously noted, the government apparently also intends to introduce Rule 404(b) testimony from [the three women named in the indictment]. Because the court cannot at this stage of the proceedings determine what that testimony may be, the court reserves ruling on any Rule 404(b) testimony from [them] until an appropriate objection is made at trial.

The government raises two points in support of its application for a writ of mandamus. First, it argues the district court was faced with identical evidence concerning the proposed Rule 404(b) testimony of these women as it had regarding the nine additional women. As a result, it is illogical for the court to conclude it could not yet rule on this evidentiary issue since it was able to rule on the admissibility of the other Rule 404(b) evidence. A simple comparison between the FBI reports and the indictment would reveal the dates and locations of the events Mr. Roberts was charged with, and those extrinsic events comprising the Rule 404(b) evidence. Second, the government maintains a writ of mandamus is appropriate because the district court's failure to rule on this issue precludes the government from appealing pursuant to 18 U.S.C. § 3731. And once Mr. Roberts' trial has begun and jeopardy has attached, the government will be unable to appeal from any adverse evidentiary ruling.

In response, Mr. Roberts argues a writ of mandamus should not issue. He contends allowing the government to seek a writ of mandamus in this instance will open the floodgates for an alternative remedy where the government fears an adverse evidentiary ruling at trial. Mandamus was not designed to be a second avenue of appeal for the government in addition to 18 U.S.C. § 3731.

Mandamus is an extraordinary remedy. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980) (per curiam). The Supreme Court has long maintained, "[t]he traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it has a duty to do so." *Mallard v. United States District Court*, 490 U.S. 296, 308 (1989) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)). The petitioner must demonstrate its right to a writ of mandamus is clear and indisputable. *Kaiser Steel Corp. v. Frates*, 911 F.2d 380, 387 (10th Cir. 1990). Mandamus cannot be used as a substitute for an appeal, so the availability of review by an interlocutory appeal decreases the rationale for granting mandamus relief. *Workman v. Jordan*, 958 F.2d 332, 334 (10th Cir. 1992).

We have identified the following five "nonconclusive guidelines" to determine when a writ of mandamus should issue: (1) the petitioner seeking the

writ has no other adequate means to secure the relief desired; (2) the petitioning party will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order constitutes an abuse of discretion; (4) the court's order represents an often repeated error and manifests a persistent disregard of federal rules; and (5) the district court's order raises new and important problems or legal issues of first impression. *Pacificare of Oklahoma, Inc. v. Burrage*, 59 F.3d 151, 153 (10th Cir. 1995); *Kaiser Steel*, 911 F.2d at 387; *Dalton v. United States (In re Dalton)*, 733 F.2d 710, 717 (10th Cir. 1984), *cert. dismissed*, 469 U.S. 1185 (1985).

We believe a writ of mandamus is inappropriate and unwarranted under the circumstances of the present case. Essentially, the government's petition asks us to allow it to use a writ of mandamus to expand the scope of its limited appeal rights pursuant to 18 U.S.C. § 3731. We are unpersuaded this case presents the appropriate vehicle to do so.

We begin our analysis with the statute itself. In enacting 18 U.S.C. § 3731, Congress granted the government a limited right of appeal in criminal cases.[4] The

_____

[4] 18 U.S.C. § 3731 states:

**§ 3731. Appeal by the United States**

In a criminal case an appeal by the United States shall lie to a

(continued...)

Supreme Court has held § 3731 allows government appeals in criminal cases whenever constitutionally permitted by the Double Jeopardy Clause of the Fifth Amendment. *United States v. Zabawa*, 39 F.3d 279, 282 (10th Cir. 1994) (citing

---

[4](...continued)
court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying the motion for revocation of, or modification of the conditions of, a decision or order granting release.

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

Pending the prosecution and determination of the appeal in the foregoing instances, the defendant shall be released in accordance with chapter 207 of this title.

The provisions of this section shall be liberally construed to effectuate its purposes.

*United States v. Wilson*, 420 U.S. 332, 337 (1975)).  Recently, in *United States*

*v. Carrillo-Bernal*, 58 F.3d 1490 (10th Cir. 1995), we surveyed in detail the

historical evolution of the government's right to lodge appeals in criminal cases.

*Id.* at 1494-97.  Specifically, *Carrillo-Bernal* involved the government's failure

to file the requisite certification under § 3731, but we believe its discussion of the

historical development leading to the contemporary § 3731 has equal resonance

here.  Before the turn of this century, government appeals in criminal cases were

considered verboten.  Since then, Congress has progressively loosened the

government's ability to receive appellate review of unfavorable district court

decisions in criminal matters.  *Id.* at 1494-95.  However, two general rules have

survived this historical evolution:  the government may only initiate criminal

appeals based on specific statutory authority; and there is a presumption against

government criminal appeals.  *Id.*  After summarizing the relevant judicial and

congressional developments during the present century, we concluded:

> In summary, this somewhat extended historical excursion has
> illuminated the exceptional nature of governmental appeals in
> criminal cases--proceedings that have been curbed by the courts and
> carefully circumscribed by Congress out of a desire (among other
> reasons) to safeguard individuals from the special hazards inherent in
> prolonged litigation with the sovereign.

*Id.* at 1497. *See generally **United States v. Scott***, 437 U.S. 82, 84-7 (1978) (summarizing the historical development of the government's right to appeal in criminal cases).

The central problem with the government's position is its limited right to appeal pursuant to 18 U.S.C. § 3731. Were we to accede to the government's request, we would be expanding the government's right to bring interlocutory criminal appeals beyond the terms of the statute. We do not believe mandamus provides the appropriate avenue for such an expansion. Given the longstanding interest of Congress in the reach of the government's power in this area, the preferable alternative is for the government to petition the legislature to remedy any perceived problems with the existing statutory scheme. Indeed, Congress has seen fit to amend this statute on several occasions, and if its wisdom so dictates, will do so again in the future in response to the government's entreaties.

Further, the cases which have used mandamus to direct a district court to make an evidentiary ruling have arisen in a different factual context. The one circuit which has granted a writ of mandamus in a case involving a pretrial evidentiary ruling has done so on the occasion of a second trial where the trial court had already heard all the evidence against the defendant. ***United States v. Barletta***, 644 F.2d 50, 52-3 (1st Cir. 1981); *cf.* ***United States v. Layton***, 720 F.2d 548, 553 (9th Cir. 1983) (approving of the district court's decision to issue an

evidentiary ruling before trial, because "[t]here has already been a trial, and the government and defense plan to use the same evidence in the second trial"), *cert. denied*, 465 U.S. 1069 (1984). The pretrial posture of this case presents an altogether different factual scenario. The government has not cited, and we have not discovered, any case granting a writ of mandamus to compel a district court to make an evidentiary ruling in this particular context.

Finally, the government contends the district court's inability to rule on the Rule 404(b) evidence from the three women is illogical given its determination of the other Rule 404(b) issue. Our remand for an appropriate hearing on the other Rule 404(b) evidence eliminates this disparate treatment. Moreover, we do not believe it was an abuse of discretion for the district court to await a fuller understanding of these three women's testimony before ruling. In particular, the court's ability to make a Rule 403 ruling on whether the evidence will confuse the jury necessitates a detailed comprehension of the substance of both the women's testimony concerning the events of the indictment and the Rule 404(b) incidents. In a prosecutor's perfect world, district courts would make all their evidentiary rulings prior to trial to enable the government to appeal pursuant to 18 U.S.C. § 3731. However, pretrial evidentiary rulings are neither always advisable nor even possible. We hold the district court's refusal to rule on this Rule 404(b) issue

was appropriate under the circumstances.[5]  Accordingly, we deny the government's petition for a writ of mandamus.

## V.

Finally, the government argues the presiding judge has exhibited a personal bias and an undisguised hostility to both the prosecution as a whole and the individual government attorneys warranting the reassignment of the case to another judge on remand.  Principally, the government focuses on several out-of-court comments the judge made to United States Attorney John W. Raley and Assistant United States Attorney Sheldon J. Sperling.[6]  The government also cites

---

[5]  Although mandamus is an extraordinary remedy, our holding does not mean that a district court may always defer evidentiary rulings until trial.  For example, when it is clear from the record that the district court has deferred its decision for the purpose of insulating its ruling from an appeal by the government, we have the authority to intervene to ensure that the government's "right to appeal is [not] adversely affected," Fed. R. Crim. P. 12(e).  *Cf. United States v. Appawoo*, 553 F.2d 1242, 1244 (10th Cir. 1977) (disapproving of "the practice of this trial judge to hear pretrial motions after the jury has been sworn," and noting that "there are references in the records to show that this is done to prevent appeals by the Government of rulings on such motions").

[6] The government has filed a motion to supplement the record with an affidavit of United States Attorney John W. Raley summarizing the presiding judge's comments.  We have examined Mr. Raley's affidavit, but our disposition of the government's request to reassign the case on remand renders this motion moot.

several of the judge's substantive and procedural rulings in this case as further evidence of his hostility and personal bias.

In ***O'Rourke v. City of Norman***, 875 F.2d 1465 (10th Cir.), *cert. denied*, 493 U.S. 918 (1989), we discussed the circumstances under which we could exercise our inherent authority to reassign a case to a different district court judge on remand. We stated:

> Ordinarily 28 U.S.C. § 144 and § 455 are invoked at the district court level to effectuate recusal. However, these statutory provisions are not the exclusive route for disqualification. The appellate court's authority to reassign exists apart from the judicial disqualification statutes. However, absent proof of personal bias, we remand to a new judge only under extreme circumstances.

*Id.* at 1475 (citations omitted). Since ***O'Rourke***, this court has not readily invoked its authority to reassign judges. In ***Women's Health Care Services, P.A. v. Operation Rescue, Nat'l***, 24 F.3d 107, 110 (10th Cir. 1994) (per curiam), we reassigned the case from the judge presiding in a civil case involving an injunction against Operation Rescue for its protests in front of Wichita, Kansas, abortion clinics during the summer of 1991. Our reassignment occurred after we earlier determined the judge abused his discretion by not recusing himself in an earlier related criminal case after his appearance on the ABC news program *Nightline* during the protests to discuss his injunction and its violation by Operation Rescue. ***Id.; United States v. Cooley***, 1 F.3d 985, 995 (10th Cir.

1993).  Similarly, in *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996), we reassigned the presiding judge from a 42 U.S.C. § 1983 prisoner lawsuit.  *Id.* at 1449-50.  In *Mitchell*, the judge expressed profound and repeated hostility to Mr. Mitchell, his Eighth Amendment claim, and his counsel.  We held a reassignment on remand was appropriate despite our conclusion the judge harbored no personal bias nor acted improperly.  *Id.* at 1450.

Our extreme reluctance to exercise our inherent authority to reassign a district court judge on remand is not accidental.  We are unwilling to do so because of the extraordinary nature of this remedy.  Two concerns animate our reassignment decisions.  First, as an appellate court, we must always recognize our basic and primary duty to ensure the availability of a fair tribunal and judicial process for all litigants including the government.  *Id.* at 1450; *In re Murchison*, 349 U.S. 133, 136 (1955).  Second,  "[w]e are also mindful that 'charges of misconduct or prejudice leveled at trial judges 'should not be lightly made and, once made, should not be casually treated by a reviewing court.'"  *Mitchell*, 80 F.3d at 1450 (quoting *United States v. Gigax*, 605 F.2d 507, 510 (10th Cir. 1979) (quoting *United States v. Cardall*, 550 F.2d 604, 606 (10th Cir. 1976), *cert. denied*, 434 U.S. 841 (1977))).

We believe these competing concerns can be best satisfied by the rule a party should only invoke our inherent authority to reassign a district judge in the

–30–

most unusual and exceptional circumstances.  In most cases, the appropriate procedure will be to file a motion for recusal before the district court pursuant to 28 U.S.C. § 144 or § 455.  This procedure will still allow us to review a district court's denial of a recusal motion since the established law of this circuit provides mandamus is the appropriate vehicle to challenge such rulings.  ***Nichols v. Alley***, 71 F.3d 347, 350 (10th Cir. 1995) (per curiam); ***Cooley***, 1 F.3d at 996 n. 9 (collecting and cataloguing various courts of appeals cases).

Applying this standard, we conclude the government has failed to demonstrate the extraordinary, exceptional, or unusual nature of this case justifying the exercise of our inherent authority.  Our review of the record on appeal reveals no reason why the government could not file a motion for recusal before the district court in the first instance.  Under the totality of circumstances presented, we decline to exercise our inherent authority to reassign this case to a different district court judge on remand.

## VI.

The district court's orders are AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with this opinion.

95-7158, 95-7169, <u>United States v. Roberts</u>

**PORFILIO**, Circuit Judge, Specially Concurring.

Because I am not persuaded the intent of Congress is as clearly expressed as the court concludes in Part I, I can only concur in the results arrived at in that section of the opinion. My reading of all the interpretive aids available to us leaves me with a sense that as employed in Rule 413, the meaning of the word "proceeding" is totally ambiguous. Every argument raised by the parties, and every interpretation they offer, is equally sensible, and I cannot find one more persuasive than the other. Thus, because there has to be an answer to this dilemma, I would grasp at the reasoning behind the Rule of Lenity and interpret the word in a manner that benefits the defendant. The result would be the same as that reached by the court, so I write here only to express my belief the court has reached the right decision, but the means it employed to do so are not as satisfactory to me as they are to the majority. In all other respects, I join in the court's opinion.