In re Walter B. ANDERSON, also known as W.B. Anderson, also known as Walter Bruce Anderson, Debtor.

Walter B. Anderson, Appellant,

v.

Robert L. Baer, Trustee; Kansas Department of Revenue; United States Trustee; Missouri Department of Revenue; Internal Revenue Service; and Barbara A. Mitchell, Appellees.

Missouri Department of Revenue, Appellant,

v.

Walter B. Anderson; Robert L. Baer, Trustee; United States Trustee; Kansas Department of Revenue; and Internal Revenue Service, Appellees.

BAP Nos. KS–01–067, KS–01–069. Bankruptcy No. 99–40093.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

April 16, 2002.

Walter B. Anderson, pro se.

Alana M. Barragán–Scott, Deputy State Solicitor (Jeremiah W. (Jay) Nixon, Missouri Attorney General and Sheryl L. Moreau, Special Assistant Attorney General, with her on the brief), Jefferson City, MO, for Missouri Department of Revenue.

Robert L. Baer, Trustee, pro se.

Before McFEELEY, Chief Judge, CORNISH, and CORDOVA[1], Bankruptcy Judges.

## OPINION

CORNISH, Bankruptcy Judge.

This is an appeal from an order of the bankruptcy court approving the trustee's final report. In the order, the bankruptcy court concluded that the trustee had "commence[d] distribution" prior to the claims filed by the taxing authorities. The debtor and the Missouri Department of Revenue ("MDOR") argue that the trustee had not commenced distribution at the time the final report was filed with the court, and therefore, the claims filed by the taxing authorities qualified for distribution under § 726(a)(1)[2]. For the reasons set forth

---

1. Honorable Donald E. Cordova, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Colorado, sitting by designation.

2. All statutory references are to Title 11 of the United States Code unless otherwise stated.

below, we reverse the decision of the bankruptcy court.

## BACKGROUND

The debtor filed bankruptcy on January 5, 1999. MDOR was not listed on the bankruptcy schedules or the mailing matrix. The Internal Revenue Service ("IRS") and the Kansas Department of Revenue ("KDOR") were listed on the debtor's schedules; however, KDOR was not listed on the mailing matrix, and the address for the IRS was in St. Louis, Missouri rather than the Kansas address set forth in the standing order. The notice, which was sent to creditors on the matrix, stated that no assets appeared to be available from which to pay unsecured creditors. Creditors were advised not to file proofs of claim until they received directions to do so. On December 21, 1999, the trustee filed a Notice of Recovery of Assets, which requested that the Clerk renotice the case and set a deadline for filing claims. On December 22, 1999, an order was entered fixing the deadline for filing claims for governmental units as June 29, 2000. No tax claims were filed by this date. Neither the trustee nor the debtor filed proofs of claim for the taxing authorities. The final report was filed on November 3, 2000. The Clerk's Notice set December 12, 2000, as the last day for filing objections, and if any objection was filed, a hearing would be held on January 25, 2001. The only objection was filed by the debtor stating that priority tax claims existed for IRS, KDOR, and MDOR, which had not been filed.

MDOR filed its proof of claim on December 4, 2000. On December 15, 2000, KDOR filed its proof of claim. On April 3, 2001, KDOR amended its proof of claim. Lastly, on April 19, 2001, the IRS filed its proof of claim.

On February 16, 2001, the court entered its order authorizing distribution of fees and expenses. In the order, the court noted that MDOR was not scheduled as a creditor; however, KDOR was listed as a creditor and did have sufficient notice to timely file a claim. The court held that, pursuant to § 726, the date on which the trustee commences distribution is the date of the filing of the final report and intended distribution. That date was November 20, 2000. The debtor filed a motion to reconsider or vacate the court's order. On March 26, 2001, the MDOR filed its concurrence to debtor's motion to reconsider or vacate.

On August 14, 2001, the court entered its order regarding the motion to reconsider order approving trustee's final report. In its order, the court realized that KDOR was not on the mailing matrix and therefore, would not have received any of the notices. The court noted, however, that the IRS was included on the mailing matrix and was sent all notices in the case. The court once again concluded that the term "commences distribution" under § 726(a)(1) was the time the trustee filed his initial version of the final report with the court. This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

■ The Bankruptcy Appellate Panel ("BAP") has jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges within this circuit. 28 U.S.C. § 158 (1994). Because no party has opted to have this appeal heard by the district court for the District of Kansas, the parties are deemed to have consented to the jurisdiction of the BAP. 10th Cir. BAP L.R. 8001–1(a). The BAP may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Fed. R. Bankr.P. 8013. "[D]ecisions by judges are traditionally divided

into three categories, denominated questions of law (reviewable *de novo),* questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The bankruptcy court's interpretation of a statute is a question of law subject to de novo review. *In re Gledhill,* 164 F.3d 1338, 1340 (10th Cir.1999).

## DISCUSSION

■ The pivotal issue here is the interpretation of the term "commences distribution" in 11 U.S.C. § 726(a)(1). Prior to the enactment of the Bankruptcy Reform Act of 1994, there was disagreement among courts as to distribution of tardily filed priority claims. 6 *Collier on Bankruptcy* ¶ 726.LH[3] (Lawrence P. King ed., 15th ed. rev.2001) (collecting cases). The Bankruptcy Reform Act of 1994 added the following language to § 726(a)(1): "proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section." Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 213(b), 108 Stat. 4106, 4126 (1994), *quoted in In re Wilson,* 190 B.R. 860, 861 (Bankr.E.D.Mo.1996). The amendment to § 726(a)(1) resolved the issue for cases filed after October 22, 1994. *Id.* § 720, 108 Stat. at 4150–51; *see Wilson,* 190 B.R. at 861. If a priority claim is tardily filed before the chapter 7 trustee commences distribution, it is given the same treatment as if it were timely filed. *Wilson,* 190 B.R. at 861. However, the term "commences distribution" is not defined in the Bankruptcy Code.

Section 726(a) provides, in pertinent part, as follows:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee *commences distribution* under this section;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case *in time for timely filing of a proof of claim* under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim.

11 U.S.C. § 726(a) (emphasis added).

■ We must begin with the language of the statute itself. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). If Congress does not define the statutory term, its common, ordinary usage may be obtained by reference to a dictionary. *United States v. Roberts,* 88 F.3d 872, 877 (10th Cir.1996) (per curiam). When interpreting a statute, the statutory language is examined. *Dalton v. Internal Revenue Service,* 77 F.3d 1297, 1299 (10th Cir.1996). The language is given its common meaning, provided that the result is not obscure or contrary to legislative purpose. *Id.* However, the court must look to the whole law, not just a single sentence or a member of the sentence. *Id.* According

to the dictionary, "commence" is defined as "to have or make a beginning; start." Merriam Webster's Collegiate Dictionary 230 (10th ed.1993). "Distribution" is defined as "the act or process of distributing." *Id.* at 338. "Distribute" is defined as "to divide among several or many, apportion." *Id.*

The court in *Wilson* was faced with the decision of at what point does a chapter 7 trustee commence distribution. 190 B.R. at 862. In *Wilson,* the MDOR filed a proof of claim, asserting a priority claim, after the filing of the trustee's final report and notice of the final report. The MDOR asserted that the date the trustee "commences distribution" is the date on which the trustee actually mails the checks. *Id.* The chapter 7 trustee and the United States Trustee argued that for policy reasons, the date the trustee "commences distribution" is the date on which the United States Trustee filed the approved final report and proposed distribution with the bankruptcy court. *Id.* The court held:

> [T]he date on which the trustee commences distribution under § 726(a)(1) is the date of Court approval of the final report and accounting.
>
> Although the Trustee's interpretation of "commences" may be correct, the language must be read in its entirety, namely *"commences distribution."* Undoubtedly, the Trustee commenced the *process* of distribution when he submitted the Final Report to the UST for its approval. But the Final Report was only a proposal when it was lodged with the UST; when the UST reviewed and audited it; and remained a proposal when the UST filed it with the Court. Indeed, a twenty (20) day objection period for creditors was provided in the Notice. It is only after the Court resolves any objections to the Trustee's Final Report and signs the order approving the report that the proposed

distribution becomes the approved distribution.

*Id.* (footnote omitted) (emphasis in original).

The court further noted that if the date on which the trustee "commences distribution" is the date of filing the final report, a hearing on the approval of the proposed distribution would be rendered nugatory. *Id.* The court also acknowledged the court's important role in resolving any disputes with the proposed distribution. *Id.*

The issue of when the trustee "commences distribution" arose in *In re Van Gerpen,* 267 F.3d 453 (5th Cir.2001). In the *Van Gerpen* case, the trustee retained a law firm to perform legal services. *Id.* at 454. The law firm filed an application for interim compensation, which was approved by the bankruptcy court and paid by the trustee. *Id.* at 455. The debtor filed two proofs of claim on behalf of the IRS approximately six months after the bar date. *Id.* The IRS then submitted a further claim. The majority of the IRS's claims were entitled to priority status. *Id.* Another creditor of Van Gerpen, a bank, objected to the IRS's claims, alleging that they were untimely because they were filed after the bar date, and the trustee had already commenced distribution at the time he made the interim payments. *Id.* Thus, the bank asserted the claims were not eligible for priority status. *Id.* The IRS argued that the claims were entitled to priority status because they were filed prior to the trustee commencing distribution of the estate.

The bank's argument in *Van Gerpen* centered on the interpretation of the dictionary definitions of "commences" and "distribution" to mean "the first act of giving out money of the estate." *Id.* at 456. The court noted:

> In bankruptcy law the term "distribution" carries a particular meaning, to the

extent that it borders on being a term of art. A well-known treatise on bankruptcy law notes that "[n]ormally the *distribution* [of a bankrupt estate] is carried out by the Chapter 7 trustee, *after the trustee has reduced the estate to cash by liquidating the debtor's nonexempt assets.*"

*Id.* (quoting 6 *Collier on Bankruptcy* ¶ 726.01, at 726–5 (Lawrence P. King ed., 15th ed. rev.2000)). The *Van Gerpen* court held that the appropriate interpretation of "commences distribution" is the date when a bankruptcy court approves the trustee's final report, thus allowing the trustee to commence final distribution of the estate. *Id.* at 457.

Because "commences distribution" is not defined in the Bankruptcy Code and the language in § 726(a)(1) is unambiguous, the plain meaning of the term should be used. After a review of the definition of "commence" and "distribution," we find that the appropriate time would be the time at which the bankruptcy court approves the final report. Up until that time, distribution is "proposed." The trustee, in his final report, states "that he has examined all claims filed in the case, and that the *proposed distribution* ... is proper." (Appellant's Appendix at 64) (emphasis added). After the filing of the trustee's final report, parties in interest are given a time in which to object, and therefore, distribution could change.

The trustee argues that if the time the trustee "commences distribution" is the date on which the final report is approved, the language in § 726(a)(2)(C) "in time to permit payment" would be rendered meaningless. However, there would inherently be time between the court's approval of the final report and the time that the trustee issues checks. Thus, the language of § 726(a)(2)(C) would not be meaningless.

## CONCLUSION

For the reasons set forth above, "commences distribution" under § 726(a)(1) is the date the trustee's final report is approved by the court. Therefore, the decision of the bankruptcy court is **reversed.**

CORDOVA, Bankruptcy Judge, concurring in result.

Although I agree with the majority that the decision of the bankruptcy court must be reversed, I write separately to express my concerns with the majority's determination that the Chapter 7 Trustee "commences distribution" under 11 U.S.C. § 726(a)(1) on the date that the bankruptcy court approves the Trustee's final report.

As the majority recognizes, neither the Code nor the Rules provide guidance for answering the question presented in this case. Since the Bankruptcy Reform Act of 1994, when Congress added the language at issue to § 726(a)(1), *see* Pub.L. No. 103–394, § 213(b), 108 Stat. 4106, 4126 (1994), only two reported cases have addressed the meaning of the phrase "commences distribution." *In re Van Gerpen,* 267 F.3d 453 (5th Cir.2001); *In re Wilson,* 190 B.R. 860 (Bankr.E.D.Mo.1996). The conclusion reached by the courts in those cases, and this Court's holding today, however, is not mandated by the text of the statute. Drawing the line at the point in time when the court approves the Trustee's final report, although practically sound, is in the nature of judicial guess-work about § 726(a)(1) in an effort to divine Congress' intent.

I believe that the phrase "commences distribution" must be examined in the context of § 726 as a whole. Examining the statute in that context leads me to conclude that several points along the continuum of the administration process in a Chapter 7 case could constitute the Trust-

ee's commencement of distribution. Given the text of the statute and the dearth of guidance in the Code, I believe that any of these alternative conclusions is equally plausible.

Section 726 is entitled "Distribution of property of the estate." Subsection (a)(1) provides that property of the estate "shall be distributed ... first, in payment of claims of the kind specified in, and in the order specified in, section 507 of [Title 11], proof of which is timely filed under section 507 of [Title 11] or tardily filed before the date on which the trustee commences distribution *under this section*." 11 U.S.C. § 726(a)(1). If distribution under § 726 is distribution of property of the estate, and such distribution is first begun "in payment of claims" [1] entitled to priority, then how can the bankruptcy court's naked act of approving the Trustee's final report, before any claim has been paid, amount to the commencement of distribution under § 726? Although the Trustee may be *authorized* to commence distribution under § 726 "in payment of claims" only after the court approves the final report, the act of approval of the report alone does not necessarily constitute the commencement of distribution under § 726. Indeed, until the Trustee takes an affirmative act of sending payment to creditors, "[d]istribution of property of the estate ... in payment of claims" has not occurred.[2]

If, however, distribution under § 726 is a process, as the Trustee contends, rather than a single act, then when is that process commenced? The majority in this case concludes that the process of distribution is commenced when the bankruptcy court approves the Trustee's final report. Again, this is a logical point for commencing the process because only after court approval may a prudent Trustee actually begin to send payments to creditors. The text of § 726(a)(1), however, does not require it.

The process of distribution could be commenced at an earlier point. As the bankruptcy court in this case concluded in its first Order Authorizing Distribution of Fees and Expenses dated February 16, 2001, the Trustee could commence distribution when he or she "files his [or her] notice, giving notice of the filing of the final report and intended distribution." In this case, although the Trustee had filed the final report with the court on November 3, 2000, he did not send notice to creditors thereof until November 20, 2000. The act of noticing the final report could, at least conceivably, commence the process of distribution under § 726(a)(1), after which priority creditors who file proofs of claim would be stripped of their otherwise priority status.

Alternatively, the process could be commenced, as the bankruptcy court concluded in its Order on Motion to Reconsider Order Approving Trustee's Final Report dated August 14, 2001, "when the trustee's initial version of the final report is filed with the [c]ourt." At that point, listed creditors have received notice of the necessity to file proofs of claim, the trustee has liquidated the assets of the estate and reviewed the proofs of claim that have been filed, and has received the approval

---

1. It is noteworthy that each numbered subpart of § 726(a) begins with the phrase "in payment of."

2. Unless the Trustee, as a practical matter, always sends checks in payment of claims to every class of creditor on the same day, then such a reading would not render § 726(a)(2)(C) meaningless. That is, unless distributing property of the estate by paying claims is both commenced and finalized through the single act of paying all claims on the same date, an unsecured, non-priority creditor could file a tardy claim after the Trustee had commenced distribution under § 726(a)(1) but still take advantage of § 726(a)(2) because such a tardy claim would have been filed "in time to permit payment."

of the final report from the Office of the United States Trustee. The final report then becomes a public document in the court's file, and although it is noticed to parties in interest either simultaneously or shortly thereafter, the act of filing the final report with the court could constitute the commencement of the process of distribution under § 726(a)(1).

At the very least, the foregoing demonstrates the ambiguity in the phrase "commences distribution" as Congress used it in § 726(a)(1). *In re Geneva Steel Co.*, 281 F.3d 1173, 1178 (10th Cir.2002) (noting that ambiguity "exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses"). "If a statute is ambiguous, a court may seek guidance from Congress's intent, a task aided by reviewing the legislative history [or by considering] the purpose behind the statute." *Id.; see New Mexico Cattle Growers Ass'n v. United States Fish and Wildlife Serv.*, 248 F.3d 1277, 1282 (10th Cir.2001). The legislative

history of the 1994 amendment to § 726(a)(1) provides little guidance, however, with respect to the precise issue presented herein.[3] *See Wilson*, 190 B.R. at 861 (noting that 1994 amendment intended to resolve split of authority as to whether allowed claims under § 507(a) had to be timely filed for distribution under § 726(a)(1)); *In re Dykas, Inc.*, 189 B.R. 1, 2 (Bankr.D.R.I.1995) (discussing 1994 amendment).

I write separately simply to point out that a trustee may commence distribution under the current version of § 726(a)(1) through a number of equally plausible extra-statutory means. I also recognize that the language of § 726(a)(1) provides little practical guidance as to when the Trustee "commences distribution." Accordingly, I concur in the result.

3. The legislative history indicates that the change to § 726(a)(1) in 1994 was intended to conform to the simultaneous amendment to § 502(b)(9), which now provides that the untimeliness of a proof of claim may be grounds for disallowance of the claim. "The amendment to section 502(b) is designed to overrule *In re Hausladen*, 146 B.R. 557 (Bankr. D.Minn.1992), and its progeny by disallowing claims that are not timely filed.... The amendments to section 726(a) of the Code, governing the distribution of property of the estate in a chapter 7 liquidation, conform to the amendments to section 1129(b) and 502(b). The amendments to paragraphs (2) and (3) of section 726(a) assure that the disallowance of late-filed claims under new section 502(b)(4) does not affect their treatment under section 726(a)." H. Rep. No. 103–835 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3357.