[No. F026644. Fifth Dist. June 11, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFONSO MALDONADO SOTO, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III, IV and V.

COUNSEL

Dawn M. Chan, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger and Thomas Y. Shigemoto, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HARRIS, J.—

### STATEMENT OF THE CASE

On May 6, 1996, an information was filed in Kern County Superior Court charging appellant Alfonso Maldonado Soto with counts I and II, lewd and lascivious conduct with a child under the age of 14 years (Pen. Code, § 288, subd. (a)), and counts III and IV, penetration of the genital opening by a foreign object by force, violence, duress, menace or fear of immediate or unlawful bodily injury on the victim or another person (Pen. Code, § 289, subd. (a)). Each of the charged offenses was alleged to have occurred on April 3, 1996. As to all counts, it was alleged that appellant had suffered one prior serious and/or violent felony conviction within the meaning of the three strikes law. It was also alleged that appellant suffered one prior serious felony conviction pursuant to Penal Code section 667, subdivision (a), and served two prior prison terms pursuant to Penal Code section 667.5, subdivision (b). Appellant pleaded not guilty and denied the special allegations.

On May 21, 1996, the prosecution filed a motion to compel discovery. On May 31, 1996, the motion was granted.

Prior to trial, the prosecution filed a motion *in limine* to permit the introduction of evidence of appellant's prior sexual conduct pursuant to Evidence Code section 1108.[1] On or about May 21, 1996, appellant filed opposition to the prosecution's motion.

On June 26, 1996, the court held a hearing on the prosecution's motion *in limine* and the matter was continued. On June 27, 1996, appellant moved for a continuance of the trial. The court granted in part the prosecution's motion

---

[1] All statutory references are to the Evidence Code unless otherwise indicated.

to admit evidence pursuant to section 1108, and denied appellant's motion for continuance. The court granted appellant's motion to bifurcate the special allegations, and appellant's trial began with jury selection. On July 3, 1996, the court denied the prosecution's motion to amend the information to conform to proof. The court granted appellant's motion to dismiss counts III and IV pursuant to Penal Code section 1118.1.

On July 8, 1996, appellant was found guilty of count I, lewd and lascivious conduct with a child under the age of 14 years. As to count II, he was found not guilty of lewd and lascivious conduct, but guilty of the lesser included offense of misdemeanor annoying or molesting a child (Pen. Code, § 647.6).

On July 9, 1996, following appellant's waiver of a jury trial, the court conducted a trial on the special allegations. The court dismissed the special allegations alleged as to count II, given appellant's conviction of a misdemeanor offense. The court found appellant suffered one prior conviction within the meaning of the three strikes law, one prior serious felony conviction pursuant to Penal Code section 667, subdivision (a), and served one prior person term pursuant to Penal Code section 667.5, subdivision (b). The court found the prior prison term allegation based on appellant's conviction in People v. Soto (Super. Ct. Kern County, No. 15473) (the third special allegation) was not true.

On August 12, 1996, the court held the sentencing hearing. As to count I, the court imposed the upper term of eight years, and doubled it to sixteen years as the appropriate second strike sentence. The court also imposed a consecutive five-year term for the prior serious felony conviction, and a consecutive one-year term for the prior prison term enhancement, for an aggregate term of twenty-two years in prison. As to count II, the court imposed a concurrent term of one year in jail.

On August 12, 1996, appellant filed a timely notice of appeal.

### FACTS

Angelique B. (born Nov. 24, 1983) and her younger brother, Adrian, lived with their mother, Margarita M., in Bakersfield. On Wednesday, April 3, 1996, Angelique and Adrian were both home for Easter vacation. At approximately 9 a.m., their mother left the house to attend a prayer meeting. Angelique and Adrian were watching television in the living room when she left.

Angelique's father arrived at the house between 9:30 a.m. and 10 a.m., and gave Angelique some money to go to the movies. Appellant Alfonso

Soto, Margarita's brother and Angelique's uncle, subsequently arrived and parked his truck next to the garage. Appellant told Angelique's father he was going to work on his truck. Adrian received permission to go to a friend's house and left through the back door and garage. At approximately 11 a.m., Angelique's father left the house and said good-bye to appellant. Appellant and Angelique were in the house when he left.

Angelique testified she was eating cucumbers and watching television in the living room when appellant entered the house through the back door. Angelique was sitting on the end of the couch next to a table. Appellant washed his hands in the kitchen and Angelique offered him some cucumbers. Appellant sat next to Angelique on the couch and smoked a cigarette. Appellant asked her to lean forward so he could use the ashtray on the end table. Angelique testified appellant placed his hand under her clothes and rubbed her back, stomach, and lower waist. Angelique testified appellant touched and rubbed her right breast and stomach, and moved his hand down her pants and touched her vagina. He popped a button on her clothes as he moved his hand under her pants. Angelique testified appellant rubbed her vagina, placed his finger inside, and repeatedly moved his finger in circular motions. Angelique was unable to move because she was between appellant and the end table.

Angelique testified appellant briefly stopped touching her and unbuckled his pants. Appellant exposed his penis and said, "Let's go to your room." Angelique replied, "No," left the couch, and went into the bathroom.

Angelique testified she cried in the bathroom and hoped her mother would return. She rinsed her face and heard a door close. Angelique thought appellant had left through the back door, and she decided to leave the bathroom. Angelique went into the kitchen and looked out the window for her mother, then realized appellant was also in the kitchen. Angelique returned to the living room and sat on the couch. Appellant sat next to her and Angelique felt scared because she did not want him to touch her again.

Angelique testified appellant wrapped his arm around her waist, placed his hand under her shirt, and repeatedly rubbed her breast in a circular motion. Appellant moved his hand down her body, and touched and rubbed her vagina. He again inserted his finger and moved it in a circular motion. Angelique was scared and believed appellant would hit her if she said anything. At trial, Angelique was impeached with her previous statements in the police report and at the preliminary hearing in which she failed to report that appellant again touched her after she left the bathroom.

After about 10 minutes, appellant left the couch and Angelique went to the living room window and realized her mother was home. Angelique told

appellant her mother was home, and appellant left the house through the back door and went into the garage.

Margarita testified she returned home between 11:30 a.m. and 12:30 p.m. Appellant was working in the garage and Angelique was in the house. Angelique was upset, her eyes were red, and she looked like she had been crying. Margarita told Angelique she was leaving again to go shopping. Angelique asked to go with her and said she did not want to stay home with appellant. Angelique told her mother she was upset with appellant because he made fun of her aunt, and she was tired of listening to him. Angelique testified appellant actually made the derogatory statements about her aunt in addition to touching her. Angelique left the house with her mother and did not have any more contact with appellant that day.

Angelique did not tell her mother about appellant's conduct. Angelique testified she felt angry and sad about appellant's conduct, but she was afraid to tell her mother and did not want to spoil Easter.

At approximately midnight on the Monday night following Easter, Angelique cried as she told her mother that appellant had done something to her. Her mother asked about his conduct, and Angelique stated he touched her chest and vagina. Margarita contacted the sheriff's department about appellant's conduct.

*Pretrial investigation*

Deputy Hansen of the Kern County Sheriff's Department responded to Margarita's residence and interviewed Angelique on April 8, 1996. Angelique provided a detailed statement about appellant's conduct in touching and rubbing her body. Margarita told Deputy Hansen she had confronted appellant about Angelique's statements, and appellant told her he simply rubbed and massaged Angelique's back at her request.

According to Deputy Hansen's report, Margarita (appellant's sister) stated she was also molested by appellant from the ages of three to thirteen years, and she filed a report with the sheriff's department about appellant's conduct in the late 1980's. Margarita stated that her sisters and their daughters also stated they were molested by appellant. In the report, Margarita specifically identified the following relatives as having been molested by appellant when they were younger: Linda C. and Charlene V., sisters of appellant and Margarita, Rochelle H. (also known as Raquel H.), and Adelaida R., appellant's nieces. The report contained the addresses and phone numbers of the four women. Margarita believed Charlene V. was 13 years old when appellant molested her. Margarita believed Rochelle H. (Raquel) was between six and eight years old when appellant molested her.

After his interview with Angelique and Margarita, Deputy Hansen contacted appellant and informed him of Angelique's allegations. According to the report, Deputy Hansen also informed appellant about sexual molestation allegations made by his three sisters and two nieces. Appellant denied the allegations, and Deputy Hansen placed him under arrest.

On April 9, 1996, Deputy Hansen prepared a supplemental report concerning Angelique's statements and appellant's arrest. Deputy Hansen also spoke with Linda C. and Charlene V., and the supplemental report lists their names, addresses, and phone numbers. Linda and Charlene stated they had been molested by appellant when they were younger, and they were both willing to testify against him. Linda stated appellant was in prison several years ago, and he attempted to molest her when the family visited him in prison. Linda and Charlene stated appellant also molested two other family members and "a neighbor girl" who was Linda's friend.

*Preliminary hearing*

On April 11, 1996, the complaint was filed in municipal court charging appellant with two counts of lewd and lascivious acts, two counts of forcible digital penetration, and several special allegations for his prior convictions.

On April 24, 1996, the preliminary hearing was held. Appellant was represented by Mr. Gonzales, the deputy public defender. Angelique and Margarita were the only witnesses, and their testimony was limited to appellant's molestation of Angelique. The court held appellant to answer and scheduled the arraignment. The following exchange occurred at the conclusion of the preliminary hearing: "[The prosecutor]: Your Honor, there was one other thing I would just like to put on the record. I had mentioned this to counsel earlier. [¶] In the police reports are listed a number of previous sexual incidents that—involving this particular defendant. I would just like this to serve as notice to the Public Defender that we would intend those under Evidence Code [section] 1108.

"The Court: All right. Mr. Gonzales will have been informed of that at this time."

Mr. Gonzales did not object or make any comments.

On May 6, 1996, the information was filed in superior court. On that same day appellant was arraigned. Appellant pleaded not guilty and denied the special allegations. The court set the matter for jury trial on June 17, 1996.

*Pretrial motions*

On May 21, 1996, the prosecution filed a motion to compel discovery. In the declaration supporting the motion, the prosecutor stated the district

attorney's office had provided discovery of all materials required by Penal Code section 1054.1 pursuant to an informal request for discovery, and continued to provide discovery as it became available. On May 31, 1996, the court granted the motion for discovery.

On June 7, 1996, the parties appeared for the trial readiness hearing, and the readiness hearing was continued. On June 11, 1996, the trial readiness hearing was held and the trial date of June 17 was confirmed.

On June 17, 18, and 25, 1996, the court trailed the matter, and trial was finally set for June 26.

At some point prior to trial, the prosecution filed a motion *in limine* to seek admission of appellant's prior sexual conduct pursuant to section 1108. The motion asserted Linda (appellant's sister) and Raquel (appellant's niece) were prepared to testify they were sexually molested by appellant when they were children. According to the motion, appellant repeatedly fondled Linda in her bed when she was seven and eight years old. Appellant also fondled Linda when she visited him in prison. Appellant fondled Raquel when she visited her grandmother (appellant's mother), and he took pictures of her on three occasions when she was naked. The molestations occurred when Raquel was between the ages of four and eight years old.

The prosecution's motion asserted evidence of appellant's prior sexual molestations was admissible pursuant to section 1108. The motion also asserted the prosecution notified appellant of its intent to introduce such evidence at the preliminary hearing, and the police report identified both witnesses and outlined their statements. The prosecution also provided appellant with investigative reports containing the witnesses' statements. The motion asserted the evidence was admissible pursuant to section 352 because the prior incidents involved young family members who were fondled in the same manner as Angelique.

Appellant filed opposition to the prosecution's motion. Appellant was represented by Mr. Kathka, the deputy public defender. According to the opposition, the prosecution provided appellant with investigatory reports concerning Linda and Raquel on June 10, 1996. Appellant requested a pretrial hearing to determine the admissibility of this evidence, and argued such evidence was irrelevant and prejudicial. Appellant also asserted the prosecution failed to provide sufficient notice at least 30 days before the scheduled trial date, as required by section 1108.

On June 26, 1996, the trial was scheduled to begin. Appellant, represented by Mr. Kathka, moved for a continuance because the prosecution had

provided him with discovery concerning another witness, Charlene V., the previous day. Appellant stated Charlene's statement alleged she was also molested by appellant when she was a child. Appellant also stated he received the reports about Linda and Raquel on June 11, and he needed additional time to investigate and prepare for these witnesses. The prosecutor stated all three witnesses were discussed in Deputy Hansen's report, which was provided to appellant prior to the preliminary hearing. Deputy Hansen's report listed their names, addresses and phone numbers. The district attorney's investigator obtained additional statements, which were provided to appellant on June 11. The prosecutor asserted appellant had been provided sufficient notice pursuant to section 1108 when he was notified at the preliminary hearing. Appellant responded that Deputy Hansen's report did not provide sufficient information to locate the witnesses.

The court reviewed Deputy Hansen's report, and queried whether Charlene's testimony would be merely cumulative to the testimony of Linda and Raquel. The prosecutor asserted Charlene's testimony would provide further corroboration and refute allegations that Angelique fabricated the incident, but conceded the other two witnesses would probably be sufficient. The prosecutor again asserted he complied with the notice requirements of section 1108 when he notified appellant of his intent to introduce such evidence at the preliminary hearing, which occurred 30 days before the scheduled trial date.

Appellant asserted the prosecution was obliged to provide detailed statements from the witnesses pursuant to section 1108. The court agreed that section 1108 required "something more than advising defense counsel at the time of the preliminary hearing with which is some bare bones information about potential witnesses under [section] 1108, I do find it reflects an intent that defense counsel be provided with meaningful discovery as to the prospective witnesses so defense counsel can anticipate the testimony and prepare to defend against it." However, the court found the prosecution had "substantially complied" with section 1108 regarding Linda and Raquel because appellant had been given "at least two weeks plus to know the details of their proposed testimony and to be able to anticipate that." The court found the prosecution failed to substantially comply with section 1108 as to Charlene, and excluded her testimony.

Appellant asserted the report from the district attorney's investigator was insufficient. The court noted appellant failed to move for a continuance when he initially received the report on June 11 or 14. The prosecutor stated he provided the investigator's report to appellant on June 7 during the trial readiness hearing.

The court found the prosecution complied with the intent of section 1108 and appellant was placed on notice and given a reasonable opportunity to defend against the testimony of Linda and Raquel. However, the court excluded Charlene's testimony because the prosecution failed to provide adequate notice and her testimony would be cumulative. The court denied appellant's motion for continuance.

The court proceeded with a foundational hearing to determine if the testimony of Linda and Raquel was admissible pursuant to section 1108. Deputy Hansen testified concerning the compilation of his incident reports which contained the witnesses' statements. Mr. Kathka (appellant's attorney) stated he never received Deputy Hansen's supplemental report. The prosecutor was not sure if the supplemental report had been sent to the defense, but the court noted it was in the court's file. Raquel testified concerning the incidents when she was sexually molested by appellant, consistent with her subsequent trial testimony discussed above. Linda did not testify at the foundational hearing, but the prosecution relied on the investigatory reports concerning her statements.

The prosecution argued the evidence was admissible pursuant to section 1108 and asserted appellant had a pattern of sexually molesting young female relatives when he was alone with them. He used the same techniques of fondling their breasts and vaginal areas. The prosecution also asserted the evidence was admissible pursuant to section 1101 because it established appellant's motive, method of operation, and pattern of sexually molesting young female relatives. The prosecution acknowledged such evidence might be considered prejudicial, but asserted it was extremely relevant to establish "how he deals with young female relatives" of similar ages. Section 1108 permitted the admission of this evidence to consider appellant's character, even though section 1101 limited the admissibility of such evidence. However, this evidence was admissible pursuant to both sections 1108 and 1101 because it rebutted any assertion the incident was an innocent touching or that appellant lacked intent to sexually molest the victim.

Appellant argued the evidence was inadmissible to establish character and propensity pursuant to section 1101, and asserted the prior incidents lacked sufficient common marks to establish mode of operation. As to section 1108, appellant asserted the admissibility of such evidence violated his constitutional rights to due process and fair trial. Appellant also asserted the evidence was prejudicial pursuant to section 352 because the prior incidents were not similar, the witnesses' ages were different, and the events occurred several years before the charged incident.

The court granted the prosecution's motion to introduce evidence of appellant's prior sexual conduct pursuant to section 1108. The court limited

the witnesses' testimony to incidents which occurred in their preteenage years, and found such evidence was probative pursuant to section 352 because of the similarity to Angelique's age. The court found the passage of time, under such limiting circumstances, was not prejudicial. The court also found the evidence admissible to establish motive and intent pursuant to section 1101, subdivision (b).

*Trial evidence*

At trial, Angelique described appellant's conduct, as discussed above. Angelique's mother and father also testified concerning their observations that day. Deputy Hansen testified concerning his interview with Angelique. According to Deputy Hansen, Angelique stated she sat on the couch next to appellant, and she tried to move away from him when he touched her. She moved as far as she could, but she was on the edge of the couch. Angelique was afraid when appellant fondled her body, and she did not know what to do. According to Deputy Hansen, Angelique only mentioned the incident which occurred before she went into the bathroom. Angelique did not mention the second incident, which occurred after she left the bathroom.

At trial, the prosecution also presented the testimony of Linda and Raquel concerning appellant's prior sexual conduct. Raquel, appellant's niece, was 26 years old at the time of trial. Raquel lived with her mother and grandmother when she was a child. Appellant, the brother of Raquel's mother, also lived at her grandmother's house. Raquel's mother had younger siblings, and she stayed home to baby-sit them while the grandmother worked during the day. Raquel testified appellant touched her in a sexual manner on two occasions at her grandmother's house. Both incidents occurred when Raquel was four or five years old, before she was old enough to go to school. The first incident occurred in her grandmother's bedroom. Raquel testified she was naked, and propped up with pillows on her grandmother's bed. She could not remember how the incident began. Appellant adjusted her legs, and repeatedly took photographs with the assistance of a bright photographic light. Raquel testified appellant repeatedly moistened her breast and vagina with his tongue. Appellant told Raquel he needed to make her body shiny for the pictures. Raquel testified she particularly remembered the bright light and the click of the camera.

Raquel testified the second occasion occurred in another bedroom in her grandmother's house. Again, she lacked any memory of how the incident began. Raquel testified she was placed on a bed with her aunt and a neighbor. They were naked, and appellant placed them on their backs and opened their legs as he took pictures.

Raquel testified she did not tell anyone about the incidents because she was scared. Raquel thought her mother would not believe it because appellant was her brother. When Raquel was 16 years old, she told someone about the incidents. When Raquel was 23 years old, she told her mother about the incidents. Appellant was present when Raquel told her mother. Raquel testified she finally talked about it because she could not carry the memory of the incident any longer.

Linda, appellant's younger sister, also testified about appellant's prior conduct. Linda was 37 years old at the time of trial. Linda testified appellant repeatedly touched her when she was a child. Appellant lived at her mother's residence. When Linda was seven or eight years old, appellant entered her bedroom while she was asleep and placed his finger in her vagina. When she awakened, appellant touched and caressed her chest. Appellant kissed her cheek and told her he loved her. Appellant directed Linda to go back to sleep because she was having a bad dream. Linda testified appellant's conduct occurred approximately four times a week from 1969 to 1973, when she moved to her grandmother's house to avoid appellant. When Linda occasionally returned to her mother's house for overnight visits, appellant again approached her at night and repeated his conduct. Linda testified she was also sexually assaulted by her other brother, stepfather, and cousin.

Linda testified she did not tell anyone about the sexual assaults because appellant and her other brother said the family would be split apart if she said anything. They also warned her to think about the impact of the accusations on her mother, who had a weak heart. Linda finally told her mother when she was 15 years old. Linda described her mother's reaction as "cold." In 1989, Linda attempted to report the matter to the Bakersfield Police Department.

Appellant, who was 45 years old at the time of trial, did not testify. Appellant introduced testimony concerning Linda's interview conducted by a district attorney's investigator prior to trial. Linda stated appellant fondled her vaginal area but she did not mention any acts of digital penetration. She was unable to recall many details because of the passage of time. Linda stated she was not sexually attacked by appellant when she lived at her grandmother's house, but she was assaulted by her cousins.

Appellant was originally charged with two counts of lewd and lascivious conduct, and two counts of forcible digital penetration based on the incident with Angelique. At trial, the court granted appellant's motion and dismissed the two counts of forcible digital penetration. The matter went to the jury on counts I and II, lewd and lascivious conduct. In the jury's presence, the

prosecution made an election that count I was based on Angelique's testimony regarding the incident that occurred before she went into the bathroom, and count II was based on Angelique's testimony regarding the incident that occurred after she left the bathroom.

Appellant was convicted of count I, lewd and lascivious conduct, based on the incident which occurred before Angelique went into the bathroom. Appellant was found not guilty of count II, lewd and lascivious conduct, which was based on the incident which allegedly occurred after she left the bathroom. Instead, appellant was convicted of the lesser offense of misdemeanor annoying or harassing a child. Appellant received the second strike sentence of 22 years in prison.

On appeal, appellant raises several challenges to the court's interpretation and application of section 1108 concerning the admission of evidence of prior sexual conduct through the testimony of Linda and Raquel. Appellant contends the prosecution failed to comply with the notice requirements of section 1108; the prejudicial nature of the testimony far outweighed its probative value; and the jury was improperly instructed concerning the manner to consider this evidence. In addition, appellant challenges the sufficiency of the evidence concerning the special allegations, and argues the prosecution improperly relied on the preliminary hearing transcripts and probation reports to prove his prior convictions. Finally, appellant challenges the application of the three strikes law.

DISCUSSION

I.

*Appellant Was Properly Notified Pursuant to Section 1108*

Appellant contends the court improperly admitted the testimony of Linda C. and Raquel H. concerning his prior sexual offenses because the prosecution failed to comply with the notice provisions of section 1108. Appellant asserts the statute requires the prosecution to provide a "detailed" statement of the proposed testimony, and the prosecution's offer failed to comply with the statute within the requisite time frame. Respondent asserts the prosecution provided adequate notice of its intent to introduce such evidence as required by the statute.

In 1995, the Legislature enacted section 1108. Subdivision (a) provides for the admissibility of evidence of "the defendant's commission of another sexual offense or offenses" when the defendant is criminally tried for the

commission of a sexual offense. Section 1108, subdivision (b) provides for the prosecution to provide prior notice of its intent to introduce such evidence: "In an action in which evidence is to be offered under this section, the people shall disclose the evidence to the defendant, *including statements of witnesses or a summary of the substance of any testimony that is expected to be offered,* at least 30 days before the scheduled date of trial or at such later time as the court may allow for good cause." (Italics added.) The notice and disclosure requirements were designed to "protect the defendant from unfair surprise and provide adequate time for preparation of a defense." (*Review of 1995 Cal. Legislation* (1996) 27 Pacific L.J. 761, 764, fn. 17, citing Assem. Com. on Public Safety, Com. Analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) dated May 9, 1995, p. 2.)

Section 1108 is modeled on rules 413 through 415 of the Federal Rules of Evidence (28 U.S.C.),[2] which were enacted in 1994. (See Historical Note, 29B pt. 3, West's Ann. Evid. Code (1998 pocket supp.) foll. § 1108, p. 31; *Review of 1995 Cal. Legislation, supra,* 27 Pacific L.J. 761, 762.) Rule 413(a) provides that in a criminal case in which the defendant is accused of an offense of sexual assault, ". . . evidence of the defendant's commission of another offense or offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant." Rule 414 applies the same rule of admissibility to criminal child molestation cases. Rule 415 allows plaintiffs to proffer such evidence in civil cases involving sexual assault or child molestation.

Rule 413(b) and rule 414(b) contain identical provisions requiring the prosecution to provide prior notice of its intent to use such evidence: "In a case in which the Government intends to offer evidence under this rule, the attorney for the Government shall disclose the evidence to the defendant, *including statements of witnesses or a summary of the substance of any testimony that is expected to be offered,* at least fifteen days before the scheduled date of trial or at such later time as the court may allow for good cause." (Italics added.) Rule 415 states a similar notice provision for the introduction of such evidence in civil cases.

The prior notice required by rules 413 through 415 "protects against surprise and allows the defendant to investigate and prepare cross-examination. It permits the defendant to counter uncharged crimes evidence with rebuttal evidence and full assistance of counsel." (*U.S.* v. *Enjady* (10th Cir. 1998) 134 F.3d 1427, 1433.)

■ Appellant asserts the prosecution failed to comply with section 1108, subdivision (b) because it did not provide a "detailed statement" of the

---

[2]All further reference to rules shall be to the Federal Rules of Evidence.

proposed testimony of Linda and Raquel 30 days before the scheduled trial date. Appellant contends the prosecution's belated disclosure of the investigator's report on June 11, just two weeks before the actual trial date, was insufficient to comply with the notice requirement, and the prosecution's failure to provide a "detailed statement" resulted in a violation of due process.

Appellant's argument ignores the procedural history of this case. At the preliminary hearing, the prosecutor informed appellant of his intent to introduce evidence of appellant's prior sexual conduct pursuant to section 1108 based on the statements of the witnesses in Deputy Hansen's reports. The prosecutor further stated the reports had been provided to the defense, and appellant's attorney did not interject or object in any manner. The preliminary hearing was held on April 24, 1996, and the trial was originally scheduled to begin on June 17, 1996. Thus, appellant was provided notice of the prosecution's intent to introduce evidence pursuant to section 1108 more than 30 days prior to the scheduled trial date.

Appellant insists the prosecution was required to present a " 'detailed statement of the substance of the witness's testimony that is expected to be offered' as is required by Evidence Code section 1108, subdivision (2)." Appellant repeatedly misquotes the substance and the language of section 1108, subdivision (b). There is nothing in the state or federal rules, or the few cases interpreting these evidentiary rules, which require the production of a "detailed" statement of the proposed evidence. Instead, section 1108, subdivision (b) simply requires the prosecution to disclose the "statements of witnesses or a summary of the substance of any testimony that is expected to be offered." Deputy Hansen's reports satisfy the prosecution's burden because they contained a summary of the testimony expected from appellant's sister and niece concerning his alleged history of sexual molestation committed against them, and stated the names, addresses, and phone numbers of the potential witnesses.

Appellant relies on his misquoted version of section 1108 and further argues the prosecution's failure to provide a "detailed" summary more than 30 days before the scheduled trial date resulted in a violation of his right to due process. Appellant argues the prosecution failed to present evidence of good cause to excuse its belated production of the investigator's report just two weeks before trial. Again, appellant's argument is refuted by the actual terms of section 1108, subdivision (b) and the procedural history of this case. Deputy Hansen's reports stated Linda and Raquel claimed to have been sexually molested by appellant when they were children. The reports lack extensive details of these prior incidents, but the statute does not require

such detail. The reports provided appellant with a summary of the substance of the proposed testimony, and the prosecutor's statements at the preliminary hearing provided sufficient notice of his intent to introduce such evidence at trial pursuant to section 1108.

Appellant's due process argument rests on the assumption that he was unaware of the prosecution's intent to introduce such evidence prior to the pretrial motion *in limine* and the production of the report compiled by the prosecution's investigator. Appellant complains the prosecution provided the requisite notice just two weeks prior to the actual trial date, and he never had time to prepare. The record reveals the contrary. Appellant was aware of the prosecution's intent to introduce such evidence over one month before the scheduled trial date. The prosecution provided the names, addresses, and phone numbers of the prospective witnesses. Indeed, the potential witnesses were not parties unknown to appellant, but several members of his immediate family. The prosecution's subsequent motion *in limine* was not the first indication of its intent to use such evidence. The prosecution complied with section 1108, subdivision (b) and provided sufficient notice of its intent to introduce evidence of appellant's prior sexual conduct. Appellant's notice and due process arguments are refuted by the record.

II.

*Admission of Evidence of Appellant's Prior Sexual Conduct*

Next, appellant asserts the trial court improperly admitted the testimony of Linda and Raquel pursuant to section 1108. Appellant argues such evidence must still survive the balancing analysis of section 352, and the prejudicial nature of the testimony far outweighed its probative value. Appellant notes the prior incidents occurred many years before the charged offense, involved conduct which was not identical to the incident described by Angelique, and the testimony was highly inflammatory.

As discussed in part I, *ante*, section 1108 is modeled on rules 413 through 415. The state and federal evidentiary rules contain nearly identical language which permits the admission of evidence of the defendant's prior sexual acts in criminal trials for sexual molestation and child molestation. There are few published California appellate cases interpreting section 1108. However, there are numerous federal cases interpreting the parallel federal rules. We will review both the state and federal evidentiary rules in determining whether the trial court properly admitted evidence of appellant's prior sexual conduct pursuant to section 1108.

A. *Section 1108.*

The admissibility of character evidence in California is generally determined pursuant to section 1101. Section 1101, subdivision (a) provides:

"Except as provided in this section and in *Sections 1102, 1103, 1108, and 1109*, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Italics added.) Section 1101, subdivision (b) permits the admission of uncharged acts when relevant to establish some fact other than a person's character or disposition, such as motive, intent, identity, or common scheme and plan. (*People* v. *Ewoldt* (1994) 7 Cal.4th 380, 393, 400 [27 Cal.Rptr.2d 646, 867 P.2d 757]; *People* v. *Balcom* (1994) 7 Cal.4th 414, 422 [27 Cal.Rptr.2d 666, 867 P.2d 777].) In addition, the admission of such evidence must be evaluated pursuant to section 352. The trial court must determine whether the probative value of such evidence is substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, confusing the issues, or misleading the jury. (*People* v. *Balcom, supra,* 7 Cal.4th at pp. 426-427.) "Evidence of uncharged offenses 'is so prejudicial that its admission requires extremely careful analysis. [Citations.]' . . . 'Since "substantial prejudicial effect [is] inherent in [such] evidence," uncharged offenses are admissible only if they have *substantial* probative value.' [Citation.]" (*People* v. *Ewoldt, supra,* 7 Cal.4th 380, 404.)

In 1995, the Legislature enacted section 1108, and amended section 1101, subdivision (a) to create an express exception to the limitation of admissible character evidence. Section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

According to the Legislative Counsel's Digest, the enactment of section 1108 created an exception to the existing prohibition in section 1101 against the introduction of evidence of a person's character or trait of character to prove conduct on a specific occasion. (See Stats. 1995, ch. 439, § 2.) With the enactment of section 1108, the Legislature "declared that the willingness to commit a sexual offense is not common to most individuals; thus, evidence of any prior sexual offenses is particularly probative and necessary for determining the credibility of the witness." (*Review of 1995 Cal. Legislation, supra,* 27 Pacific L.J. 761, 762.)

The Historical and Statutory Notes contained in the annotations for section 1108 discuss the legislative history of the enactment. (See Historical Note, 29B pt. 3, West's Ann. Evid. Code, *supra,* foll. § 1108, p. 31.) During the legislative hearings, the language of the proposed section 1108 was

amended " 'to provide explicitly that evidence of other offenses within the scope of the section is not subject to [section] 1101's prohibition of evidence of character or disposition. This makes it clear that [section] 1108 permits courts to admit such evidence on a common sense basis—without a precondition of finding a "non-character" purpose for which it is relevant—and permits rational assessment by juries of evidence so admitted. This includes consideration of the other sexual offenses as evidence of the defendant's disposition to commit such crimes, and for its bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense.' " (*Ibid.*)

While section 1108 "explicitly supersedes" section 1101's prohibition of evidence of character or disposition, it does not supersede other provisions of the Evidence Code, such as normal hearsay restrictions and the court's authority to exclude evidence presenting an overriding likelihood of prejudice under section 352. (Historical Note, 29B pt. 3, West's Ann. Evid. Code, *supra*, foll. § 1108, p. 31.) The legislative history expressly refers to the balancing analysis of *Ewoldt* and *Balcom* as analogous situations. (*Ibid.*) However, section 1108 affects the practical operation of section 352 balancing " 'because admission and consideration of evidence of other sexual offenses to show character or disposition would be no longer treated as intrinsically prejudicial or impermissible. Hence, evidence offered under [section] 1108 could not be excluded on the basis of [section] 352 unless "the probability that its admission will . . . create substantial danger of undue prejudice". . . substantially outweighed its probative value concerning the defendant's disposition to commit the sexual offense or offenses with which he is charged and other matters relevant to the determination of the charge. As with other forms of relevant evidence that are not subject to any exclusionary principle, the presumption will be in favor of admission.' " (Historical Note, 29B pt. 3, West's Ann. Evid. Code, *supra*, foll. § 1108, p. 31.) Section 1108 does not require " 'more exacting requirements of similarity between the charged offense and the defendant's other offenses . . . .' " (*Ibid.*) Such a requirement was not added to the statute because "doing so would tend to reintroduce the excessive requirements of specific similarity under prior law which [section 1108] is designed to overcome, . . . and could often prevent the admission and consideration of evidence of other sexual offenses in circumstances where it is rationally probative. Many sex offenders are not "specialists", and commit a variety of offenses which differ in specific character.' " (*Id.* at pp. 31-32.)

Section 1108 was interpreted in *People* v. *Fitch* (1997) 55 Cal.App.4th 172 [63 Cal.Rptr.2d 753], where the court determined the admission of

evidence of the defendant's prior sexual offenses pursuant to section 1108 does not violate the defendant's rights to due process and equal protection. *Fitch* noted such evidence was still subject to exclusion pursuant to section 352, which provides "a safeguard against the use of uncharged sex offenses in cases where the admission of such evidence could result in a fundamentally unfair trial." (55 Cal.App.4th at p. 183.) By subjecting such evidence to the weighing process of section 352, "the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury." (55 Cal.App.4th at p. 183.) *Fitch* did not address the actual balancing process in determining the admissibility of evidence pursuant to section 1108.

Section 1108 was also interpreted in *People v. Harris* (1998) 60 Cal.App.4th 727 [70 Cal.Rptr.2d 689] (review den.). In *Harris*, the defendant was a mental health nurse at a treatment center, and was accused of fondling, kissing and sexually preying on women who were vulnerable due to their mental health conditions. The prosecution sought to introduce evidence of defendant's prior burglary conviction, which occurred when he was an assistant manager of an apartment complex: Defendant used the keys, entered the victim's apartment, sexually assaulted her, and brutally beat and stabbed her. Defendant was employed at a psychiatric hospital at the time, but the burglary victim was not connected to defendant's employment. (*Id.* at pp. 731-733.) The trial court permitted the prosecution to introduce redacted evidence of the prior incident, which inferred defendant preyed upon the burglary victim in committing the offense. In closing argument, the prosecutor asserted the evidence established defendant's pattern of preying on victims who cannot fight back, and the prior incident should help the jury determine whether or not defendant committed the charged sexual assaults. (*Id.* at pp. 734-736.)

On appeal, *Harris* examined the manner in which the balancing test of section 352 should be applied to evidence introduced pursuant to section 1108. *Harris* noted that every case on the application of section 352 to prior conduct evidence predates section 1108. (60 Cal.App.4th at p. 737.) However, section 1108 passed constitutional muster "if and only if section 352 preserves the accused's right to be tried *for the current offense*." (60 Cal.App.4th at p. 737.)

"The factors we consider are derived from the text of section 352 and the cases which have arisen in the context of the use of prior conduct admitted under section 1101. We recognize that different considerations may apply in the context of section 1108. However, section 1108 functions as another

albeit much broader exception to the general rule of exclusion of other crimes evidence." (60 Cal.App.4th at p. 737.)

*Harris* relied on *Ewoldt*'s discussion of the section 352 balancing factors, and held the trial court improperly admitted evidence of the prior offense pursuant to section 1108. *Harris* found the redacted evidence of the prior burglary was inflammatory in the extreme, and the jury heard an incomplete and distorted version of the incident inferring it was also based on a breach of trust and taking advantage of a physically and emotionally vulnerable victim. (60 Cal.App.4th. at p. 738.) The prior incident occurred 23 years before the charged offenses, and the incident was remote because defendant led a relatively blameless life (aside from a drunk driving arrest) following his release from prison. (*Id.* at p. 739.) *Harris* also rejected the trial court's determination the prior incident was probative: "The evidence did little more than show defendant was a violent sex offender. The evidence that defendant committed a violent rape of a stranger, as the jury was led to believe, did not bolster [the victims'] credibility nor detract from the evidence impeaching their stories. [¶] Although this is not a section 1101 case, the trial court properly took into consideration the degree of similarity of the prior and current offenses, as similarity would tend to bolster the probative force of the evidence. We agree with the trial court that the degree of similarity present is not sufficiently distinctive to make the evidence admissible under section 1101, and agree that it did not need to be. But we disagree with the trial court's view that there was any meaningful similarity at all. The prior conduct evidence is so totally dissimilar to the current allegations that the trial court's finding that it was very probative fails to answer the question: Probative *of what*?" (60 Cal.App.4th at p. 740.) The trial court noted the victims of the charged offenses and the victim of the prior burglary were all Caucasian and in their 20's to 30's. The defendant shared the same age and racial characteristics, however, and the victims were members of a wide statistical group "that includes the majority of the victims of sexual assaults." (*Ibid.*) *Harris* concluded the introduction of a 23-year-old act of "inexplicable sexual violence . . . heavy with 'undue prejudice' and dangerous in the hands of a jury was not particularly probative of the defendant's predisposition to commit these 'breach of trust' sex crimes." (*Id.* at pp. 740-741.) *Harris* reversed defendant's conviction because the introduction of the evidence was prejudicial. (*Id.* at p. 741.) Thus, *Harris* relied on the same factors used in section 1101 cases to determine the prejudicial nature of evidence introduced pursuant to section 1108.

B. *Rules 413 through 415*

As discussed above, section 1108 is modeled on rules 413 through 415, which were enacted in 1994 as part of the Federal Crime Bill. (See Historical

Note, 29B pt.3, West's Ann. Evid. Code, *supra*, foll. § 1108, p. 31; *Review of 1995 Cal. Legislation, supra,* 27 Pacific L.J. 761, 762.) The Historical and Statutory Notes contained in the annotations for section 1108 state the legislation was modeled after rules 413 through 415, and expressly adopts the principles of the particular federal rules to the framework of California law. (See Historical Note, 29B pt. 3, West's Ann. Evid. Code, *supra,* foll. § 1108, p. 31.) The legislative history for section 1108 expressly relies on the legislative history of the federal rules for " 'explanation concerning the background, rationale, and effect' " of section 1108. *(Ibid.)*

 The decisions of federal courts are not controlling on matters of state law. *(Estate of D'India* (1976) 63 Cal.App.3d 942, 948 [134 Cal.Rptr. 165].) Federal decisions are particularly compelling, however, where a California statute is based on another federal statute or the federal rules. (See *Crummer* v. *Beeler* (1960) 185 Cal.App.2d 851, 858 [8 Cal.Rptr. 698]; *Smith* v. *Superior Court* (1961) 189 Cal.App.2d 6, 10 [11 Cal.Rptr. 165, 88 A.L.R.2d 650]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 781, pp. 751-752.) Given the paucity of cases interpreting section 1108, a review of federal decisions interpreting the parallel federal statutes may be helpful in determining the admissibility of evidence pursuant to section 1108.

Rule 404(b) generally prohibits the introduction of evidence of other crimes, wrongs, or acts to demonstrate the defendant's bad character, moral turpitude, or criminal disposition to prove he acted in conformity with the prior acts or events. *(U.S.* v. *Sumner* (8th Cir. 1997) 119 F.3d 658, 660 ; *U.S.* v. *Roberts* (10th Cir. 1996) 88 F.3d 872, 879.) However, rule 404(b) permits the introduction of such evidence for other approved purposes, including to demonstrate the defendant's motive, opportunity, identity, intent, and common scheme or plan. *(U.S.* v. *Sumner, supra,* 119 F.3d at p. 660; *U.S.* v. *Roberts, supra,* 88 F.3d at p. 879.) However, evidence that would be admissible pursuant to rule 404(b) may nonetheless be excluded pursuant to rule 403 if the trial court conducts a balancing analysis and determines its probative value is substantially outweighed by its potential for unfair prejudice. *(U.S.* v. *Sumner, supra,* 119 F.3d at p. 660; *U.S.* v. *Roberts, supra,* 88 F.3d at p. 879; *U.S.* v. *Larson* (2d Cir. 1997) 112 F.3d 600, 604.)[3] Thus, rule 404 provides for the limited use of character evidence subject to the same limitations provided by section 1101.

Rules 413, 414, and 415 were enacted as companion rules as part of the Violent Crime Control and Law Enforcement Act of 1994. *(U.S.* v. *Sumner,*

---

[3] Rule 403 provides for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." and is nearly identical to the balancing test of section 352.

*supra,* 119 F.3d 658, 661; *U.S.* v. *Guardia* (10th Cir. 1998) 135 F.3d 1326, 1328; *U.S.* v. *Roberts, supra,* 88 F.3d 872, 876.) Rule 413(a) provides in pertinent part: "In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant." Rule 414(a) applies the same rule to criminal child molestation cases, and provides in pertinent part: "In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Rule 415 applies rules 413 and 414 to civil cases involving sexual assault or child molestation.

Prior to the admission of evidence pursuant to rules 413, 414 or 415, the trial court must exercise its discretion and determine whether the probative value of such evidence is substantially outweighed by its prejudicial effect, pursuant to the balancing test of rule 403. (*U.S.* v. *Meacham* (10th Cir. 1997) 115 F.3d 1488, 1492, 1495; *U.S.* v. *Sumner, supra,* 119 F.3d 658, 661-662; *U.S.* v. *LeCompte* (8th Cir. 1997) 131 F.3d 767, 769; *U.S.* v. *Larson, supra,* 112 F.3d 600, 604; *U.S.* v. *Enjady, supra,* 134 F.3d at p. 1433; *U.S.* v. *Guardia, supra,* 135 F.3d at pp. 1329-1330.)

Rules 413 through 415 mark "a sea change" in the federal rules' approach to character evidence. (*U.S.* v. *Guardia, supra,* 135 F.3d at p. 1330.) The rules provide specific admissibility standards in sexual assault and child molestation cases, are designed to create an exception to the general rule against propensity evidence, and " 'supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404 (b).' [Citation.]" (*U.S.* v. *LeCompte, supra,* 131 F.3d 767, 769; *Frank* v. *County of Hudson* (D.N.J. 1996) 924 F.Supp. 620, 624; *U.S.* v. *Roberts, supra,* 88 F.3d 872, 876; *U.S.* v. *Meacham, supra,* 115 F.3d 1488, 1491-1492.) "In contrast to Rule 404(b)'s general prohibition of evidence of character or propensity, the new rules for sex offense cases authorize admission and consideration of evidence of an uncharged offense for its bearing 'on any matter to which it is relevant.' " (*U.S.* v. *Roberts, supra,* 88 F.3d 872, 876.)

The enactment of rules 413 through 415 was intended to reverse the presumption against evidence of prior bad acts contained in rule 404(b), and is likely to "result in less evidence being excluded under the balancing test of Rule 403." (*U.S.* v. *Guardia* (D.N.M. 1997) 955 F.Supp. 115, 118.) While rule 403 balancing is still applicable, the legislative intent is for the courts to liberally admit evidence of prior uncharged sex offenses. (*U.S.* v. *Meacham, supra,* 115 F.3d at p. 1492.)

" 'The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule. The presumption is in favor of admission. The underlying legislative judgment is that the evidence admissible pursuant to [the new rules] is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects.' " (*U.S.* v. *Sumner, supra,* 119 F.3d at p. 662.)

"A defendant with a propensity to commit acts similar to the charged crime is more likely to have committed the charged crime than another. Evidence of such a propensity is therefore relevant. . . . [¶] In most cases . . . the court must exclude propensity evidence despite its acknowledged relevance. . . . Under Rule 413, however, evidence of a defendant's other sexual assaults may be admitted 'for its bearing on any matter to which it is relevant.' [Citation.] Thus, Rule 413 supersedes Rule 404(b)'s restriction and allows the government to offer evidence of a defendant's prior conduct for the purpose of demonstrating a defendant's propensity to commit the charged offense." (*U.S.* v. *Guardia, supra,* 135 F.3d at pp. 1328-1329, italics omitted, citing *U.S.* v. *Meacham, supra,* 115 F.3d 1488, 1491; *U.S.* v. *Roberts, supra,* 88 F.3d 872, 876.) Similarly, rule 414 permits evidence of other instances of child molestation "as proof of, inter alia, a 'propensity' of the defendant to commit child molestation offenses . . . ." (*U.S.* v. *Larson, supra,* 112 F.3d at p. 604, italics omitted.)

The rules allow for the introduction of evidence that otherwise would be excluded. "If Rule 413 evidence were always too prejudicial under [Rule] 403, Rule 413 would never lead to the introduction of evidence. Therefore, Rule 413 only has effect if we interpret it in a way that leaves open the possibility of admission." (*U.S.* v. *Guardia, supra,* 135 F.3d at p. 1330.)

The fact that Congress enacted the rules "can only mean that Congress intended to partially repeal the 'concrete application' found in [Rule] 404(b) for a subset of cases in which Congress found [Rule] 404(b)'s rigid rule to be inappropriate. That conclusion is not surprising, given the fact that propensity evidence has a unique probative value in sexual assault trials and that such trials often suffer from a lack of any relevant evidence beyond the testimony of the alleged victim and the defendant. [Citation.]" (*U.S.* v. *Guardia, supra,* 135 F.3d at p. 1330.) However, the trial court should not alter its normal process of weighing the probative value of the evidence against the danger of unfair prejudice when balancing rule 413 evidence under rule 403. (135 F.3d at pp. 1330-1331.) The risk of prejudice will be present to varying degrees. ██ "Propensity evidence, however, has indisputable probative value. That value in a given case will depend on

innumerable considerations, including the similarity of the prior acts to the acts charged [citation], the closeness in time of the prior acts to the charged acts [citation], the frequency of the prior acts, the presence or lack of intervening events [citation], and the need for evidence beyond the testimony of the defendant and alleged victim." (*Id.* at p. 1331.)

While there is a danger of unfair prejudice presented by the " 'unique stigma' of child sexual abuse," this danger is "one that all propensity evidence in such trials presents. It is for this reason that the evidence was previously excluded, and it is precisely such holdings that Congress intended to overrule." (*U.S.* v. *LeCompte, supra*, 131 F.3d 767, 770.)

In light of these concerns, the introduction of evidence pursuant to rules 413 through 415 must be evaluated on a case-by-case basis to determine whether the significance of the prior acts has become too attenuated and whether the memories of the witnesses have likely become too frail. (*U.S.* v. *Larson, supra*, 112 F.3d 600, 605.) "The legislative history of Rule 414 reveals that Congress meant its temporal scope to be broad, allowing the court to admit evidence of Rule 414 acts that occurred more than 20 years before trial . . . ." (*Ibid.*) According to the legislative history: " 'No time limit is imposed on the uncharged offenses for which evidence may be admitted; as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding substantial lapses of time in relation to the charged offense or offenses.' [Citations.]" (*Ibid.*)

## C. *Discussion*

Having reviewed the legislative history and analysis of the new state and federal rules concerning the admissibility of prior sexual acts, we turn to the trial court's decision to introduce such evidence against appellant in the instant case. Appellant was initially charged with two counts of lewd and lascivious conduct and two counts of forcible digital penetration committed against his niece, Angelique. Appellant arrived at Angelique's house and committed the acts after her mother, father and brother left the residence. Angelique testified appellant fondled her body and rubbed her breasts and vaginal areas. He inserted his finger into her vagina and repeatedly moved his finger in a circular direction. He exposed his penis and he directed Angelique to go into the bedroom. Angelique refused and left the living room. Angelique testified appellant again fondled her body when she returned to the living room, and ceased only when she announced her mother had returned home.

The evidence of prior sexual conduct admitted pursuant to section 1108 consisted of the testimony of Linda C. and Raquel H. Linda., appellant's sister, testified to a lengthy series of sexual molestations committed by appellant when she was a child. Appellant fondled her body and placed his finger in her vagina. The incidents occurred at night in her bedroom. Raquel, appellant's niece, testified appellant took photographs of her when she was naked. He placed her on the bed, arranged her body in particular poses, and repeatedly moistened her body with his tongue to enhance the photographs. Raquel could not remember how the incidents began, but the photographs were taken in a bedroom and her clothes had been removed.

Appellant asserts while such evidence might be admissible pursuant to section 1108. it should have been excluded pursuant to section 352 because it was highly inflammatory. The incidents occurred several years before the charged offense and did not involve similar conduct as with the charged offenses. As we have seen. however. section 1108 now permits the introduction of such propensity evidence in sexual molestation cases. Appellant's reliance on cases limiting the introduction of section 1101 character evidence is not persuasive given the legislative intent for section 1108 to supersede the general rules prohibiting character evidence.

The testimony of Linda and Raquel did not involve the same type of brutal, inflammatory conduct found prejudicial in *People* v. *Harris, supra*, 60 Cal.App.4th 727. Instead, their testimony presented evidence of prior sexual molestations similar to the incident described by Angelique: Appellant took advantage of being alone in the house with a very young female relative; he fondled their bodies with his hands and tongue; he fondled and digitally penetrated their vaginal areas; and he engaged in such conduct more than once with each victim. While appellant sexually molested Linda and Raquel in their bedrooms, and also took photographs of Raquel, we note appellant exposed his penis and directed Angelique into the bedroom after he fondled and penetrated her body. It was only Angelique's refusal, and her mother's subsequent return to the house, which prevented appellant from somehow getting her into the bedroom and continuing the molestation or escalating his conduct.

As for the passage of time, we note the victims were within the same age range as Angelique when the prior acts occurred. As discussed in *U.S.* v. *Larson, supra*, 112 F.3d 600, 605, the passage of a substantial length of time does not automatically render the prior incidents prejudicial. Here, the propensity evidence was extremely probative of appellant's sexual misconduct when left alone with young female relatives, and is exactly the type of evidence contemplated by the enactment of section 1108 and the parallel

federal rules. The prejudice presented by this evidence is the type inherent in all propensity evidence and does not render the evidence inadmissible.

We thus conclude the trial court properly admitted evidence of appellant's prior sexual conduct pursuant to sections 1108 and 352. The probative value of the propensity evidence outweighed any prejudicial effect inherent in such evidence. Given this conclusion, we need not reach appellant's alternate contention that the evidence was also inadmissible pursuant to section 1101.

III.-V.*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Dibiaso, Acting P. J., and Thaxter, J., concurred.

*See footnote, *ante*, page 966.