Filed 7/25/16  P. v. Crespo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE SALAZAR CRESPO,<br><br>Defendant and Appellant. | F071076<br><br>(Super. Ct. No. BF156441A)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Sarah J. Jacobs, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Kane, Acting P.J., Detjen, J. and Smith, J.

Appellant Jose Salazar Crespo appeals his conviction on a single count of sexual penetration with a foreign object while the victim is unconscious (Pen. Code, § 289, subd. (d)). Appellant contends he was prejudiced when the trial court erroneously admitted evidence of uncharged sexual misconduct. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was convicted following a jury trial. At trial, several somewhat differing versions of the relevant events were recounted. However, given the issues raised in this appeal, these differences are not material and only a few are specifically noted below for context.

On August 9, 2013, the victim, L.S., traveled with her children from Santa Clarita to Bakersfield for a weekend dentist appointment. Late in the evening on August 9, 2013, the victim met up with her brother-in-law and his wife, G.S. and C.S., planning to stay at their house overnight.[1] G.S. and C.S. were married and living in a three-bedroom home with appellant and appellant's teenage son, G.S.'s half-brother, J.S.

Upon arriving in Bakersfield, the victim, her children, G.S., C.S., and J.S. went to the home of one of C.S.'s friends to socialize. They watched a movie, talked about birthday plans, and G.S. and the victim drank some alcohol. The family then returned to G.S.'s house where they continued socializing and G.S. and the victim continued to drink. Sometime later, well after midnight, everyone went to bed. The victim slept on the floor in the living room with her children, while G.S., C.S., and J.S. retired to their rooms. Appellant, who worked the night shift as a truck driver, was not present.

At some point in the night, the victim awoke, needing to use the restroom. She attempted to use the bathroom in the hall, but found it was occupied, so she entered

---

[1] To the extent the primary witnesses in this case share the same surname, they will be referred to by their first and last initial.

2

appellant's bedroom to use his restroom. The victim testified appellant was not present when she entered his room. After using the bathroom, the victim sat on the edge of appellant's bed and apparently fell asleep. She awoke to find appellant next to her with his hand underneath her clothing and his finger in her vagina.

The victim immediately fled the home with her children, but realized she had left her wedding ring in G.S. and C.S.'s bedroom. She returned for the ring, informed G.S. and C.S. of what had happened, and a confrontation between G.S., the victim and appellant ensued. During that confrontation, appellant allegedly became angry and said, "She wanted it."

Later, in front of the residence, but before the police arrived, appellant and the victim allegedly continued arguing about the incident. This argument occurred in front of at least G.S., C.S., and C.S.'s mother, Mary Teresa Palacios, who had arrived, while the victim's husband listened on the phone after being called by his wife. The various accounts of that argument involved appellant stating either: "She wanted it. She wanted me to touch her," while making a suggestive hand gesture; she wanted it or she asked for it; "I did do it but I did it because you wanted it"; "she wanted it"; or "Yeah, I touched you, but that's what you wanted; right?"

At trial, appellant denied touching the victim or making any of the statements attributed to him. Appellant testified he had arrived home at around 6:00 a.m. to find the victim sleeping on the living room floor with her children. After saying good morning to J.S., appellant went to his bedroom and went to bed. Appellant claimed he later awoke to the feeling of someone caressing his inner leg and genitalia. He realized it was the victim touching him, told her to leave his room, and went back to sleep. Appellant was later awoken by G.S. and confronted with the victim's claims, which appellant denied. When the victim made statements about appellant's dead wife he became angry and demanded

3

the victim leave.  Appellant then called the police and waited in the house for their arrival.

In support of its case, the People called two witnesses to testify regarding appellant's past sexual misconduct.  Both were sisters of appellant's deceased wife.  The first, O.S., testified she met appellant when she was either 12 or 13 years old.  Between the ages of 14 and 16 years, O.S. alleged that appellant constantly fondled her buttocks.  These incidents typically occurred inside O.S.'s home when she was left alone with appellant.

The second, M.M., testified appellant touched her butt, breasts, and vagina, over her clothing, from the time she was approximately 10 years old until she was 14 years old.  Some incidents occurred around M.M.'s home, particularly in the bathroom, while others involved appellant driving M.M. to remote locations.  M.M. detailed one incident where she awoke in bed with a hand being "pushed into her behind."  M.M. recognized appellant hiding beside her bed when she awoke, causing him to flee.  These incidents stopped when appellant moved away.

For both witnesses, the incidents occurred sometime in the late 1970's or early 1980's and there was no testimony showing they were reported to the police.  Aside from these allegations, there was no evidence introduced showing appellant had any other run-ins with the law prior to the present charges.

Based on the inflammatory nature of these allegations, their remoteness in time to the present charges, and appellant's otherwise clean record, appellant had sought to exclude them, along with additional allegations of misconduct and the testimony of a third witness, through a motion in limine.  After extensive argument and an evidentiary hearing, the trial court granted appellant's motion with respect to the third witness and limited the testimony that could be introduced during trial to what was noted above.

4

Following appellant's conviction, he was sentenced to six years in prison. This appeal timely followed.

## DISCUSSION

Appellant contends the prior sexual misconduct evidence introduced at his trial was more prejudicial than probative and, thus, that the trial court erred when admitting it under Evidence Code sections 352 and 1108.

### *Standard of Review and Applicable Law*

"Subject to Evidence Code section 352, Evidence Code section 1108 permits a jury to consider prior incidents of sexual misconduct for the purpose of showing a defendant's propensity to commit offenses of the same type, and essentially allowing such evidence to be used in determining whether the defendant is guilty of the current sexual offense charge." (*People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1096 (*Miramontes*).) "[B]ecause Evidence Code section 1108 conditions the introduction of uncharged sexual misconduct or offense evidence upon whether it is admissible under Evidence Code section 352, any valid objection to such evidence, as well as any derivative due process claim, necessarily depends on whether the trial court sufficiently and properly evaluated the proffered evidence under that section." (*Id.* at p. 1097.)

In analyzing proposed evidence of prior sexual misconduct under Evidence Code sections 352 and 1108 for admissibility, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.) " 'A trial

5

court "may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." ' " (*People v. Robertson* (2012) 208 Cal.App.4th 965, 991 (*Robertson*).)

"A challenge to admission of prior sexual misconduct under Evidence Code sections 1108 and 352 is reviewed under the deferential abuse of discretion standard and will be reversed 'only if the court's ruling was "arbitrary, whimsical, or capricious as a matter of law." ' " (*Robertson*, *supra*, 208 Cal.App.4th at p. 991.)

### *The Trial Court Did Not Abuse Its Discretion*

Appellant argues multiple factors show introduction of the disputed evidence was an abuse of discretion in this case. Appellant contends the uncharged conduct was so fundamentally different in nature than the charged offenses, due to the fact it involved the abuse of children, that it should be found inadmissible under section 1108. Appellant also contends the uncharged conduct was too remote in time, particularly given appellant's clean record between instances, to be admissible. Finally, appellant contends admission of such inflammatory, uncharged conduct would inevitably distract the jury, entice them to convict on the uncharged crimes, and place upon defendant the impossible burden of defending against the claims. We disagree.

It is not the case that allegations of sexual misconduct against minors are so different in nature than other incidents of sexual misconduct that they are inadmissible under Evidence Code section 1108. Indeed, it is well settled that under "Evidence Code section 1108, subdivision (d)(1)(A) through (F), the prior and charged offenses are considered sufficiently similar, for admissibility in this matter, if they are both the type of sexual offenses enumerated there." (*Miramontes*, *supra*, 189 Cal.App.4th at p. 1099.) Nor are such crimes so inflammatory as to be immediately deemed inadmissible in cases where crimes against adults are alleged. (Cf. *Robertson*, *supra*, 208 Cal.App.4th at

6

p. 972, 988 [evidence of prior crime committed against 17-year-old minor admissible in case where current victim was adult mother of four].)  As there is no challenge to the qualifying nature of the prior sexual misconduct claims, the court did not err by failing to exclude the proposed evidence simply on the basis that the prior conduct involved minors.  (See *People v. Soto* (1998) 64 Cal.App.4th 966, 990 [explaining in context of similar federal law that "[w]hile there is a danger of unfair prejudice presented by the ' "unique stigma" of child sexual abuse,' this danger is 'one that all propensity evidence in such trials presents' "].)

Similarly, the fact that the alleged misconduct occurred roughly 20 years ago is not a de facto basis for excluding the evidence, even in cases where the defendant has a clean record between claims.  "No specific time limit exists as to when an uncharged crime is so remote as to be excludable." (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1099.)  While appellant is correct that the long passage of time and an otherwise clean record were relevant factors in excluding prior sexual misconduct evidence in *People v. Harris* (1998) 60 Cal.App.4th 727 (*Harris*), those facts were not case determinative and served as only one factor weighing in favor of exclusion.  Notably, in *Harris* the prior sexual misconduct, involving a brutal assault to and the desecration of a human body, was so fundamentally different than the charged conduct that it both lacked any significant probative value and was inflammatory in the extreme, while the sanitized version presented to the jury was so incomplete and distorted that it could do little more than generate speculation. (*Id.* at p. 733-735, 738-741.)

Ultimately in these analyses, the question is whether the trial court properly balanced the probative value of the evidence against the prejudice arising from admission.  Our review of the record does not show an abuse of discretion in this regard. While appellant argues there was limited probative value to the prior sexual misconduct evidence, the record supports an alternative conclusion.  The prior alleged assaults

7

involved female family members, related by marriage, that were inappropriately touched when left alone with appellant. These instances shared the common theme of appellant placing his hand on or in the victim's private areas, with one occurring while the victim slept. While differences in age and location existed and were relevant, the similarities in the general conduct were sufficient for the trial court to find a strong probative value to the testimony in light of appellant's initial denial of any improper conduct and later testimony that the victim in this case was the aggressor.

In contrast, based on the factual record, the exclusionary factors could rationally be viewed as either neutral or only slightly in favor of exclusion by the trial court. Appellant does not argue the uncharged conduct was more inflammatory than the charged offense or that its introduction generated an undue consumption of time. While the remoteness in time and appellant's apparently clean record would weigh against admission, the similarity between the charged and uncharged conduct could be rationally deemed to balance out some of the weight of this factor. (*People v. Branch* (2001) 91 Cal.App.4th 274, 285.) Moreover, while the additional evidence could confuse the jury, place an additional defense burden on appellant, or generate a desire to punish appellant for that past conduct, none of these factors appear to weigh heavily in favor of exclusion, are generally minimized by the high probative value of the evidence, and were further minimized by the trial court's proper instructing of the jury on these matters, which is not challenged on appeal.

Finally, we are persuaded the trial court engaged in an appropriate analysis which was neither arbitrary, whimsical, nor capricious. The trial court expressly considered arguments similar to those appellant raises here, including spending substantial time on the remoteness and relevance considerations, and placed its reasoning for allowing the trial testimony on the record. Moreover, the trial court excluded all testimony where appellant was not clearly identified as the perpetrator, the conduct was not similar in

terms of its sexual nature, or the witness did not recount specific facts supporting the claim at the evidentiary hearing.  This resulted in the complete exclusion of one witness and one allegation of prior conduct where duct tape was used to cover the victim's eyes and supports our view that the trial court's decision was not arbitrary in nature. Accordingly, we find no abuse of discretion in the trial court's decision to permit evidence of past sexual misconduct in this case.

## DISPOSITION

The judgment is affirmed.